The STATE of Ohio, Appellee,

v.

DUGANITZ, Appellant.

[Cite as *State v. Duganitz* (1991), 76 Ohio App.3d 363.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59128.

Decided Nov. 25, 1991.

*Stephanie Tubbs–Jones,* Prosecuting Attorney, for appellee.
*David L. Doughten,* for appellant.

PATRICIA A. BLACKMON, Judge.

The appellant Michael Duganitz was convicted and sentenced, after a trial to the bench, for carrying a concealed weapon in violation of R.C. 2923.12 and having a weapon under disability in violation of R.C. 2923.13. The indictment in both counts included a specification that the appellant was previously convicted of an offense of violence.

The appellant timely appeals to this court challenging the convictions on the ground that the prosecution failed to prove beyond a reasonable doubt every element of the offenses. We agree, and for the reasons set forth below, we reverse the convictions.

The evidence admitted at trial consisted of the testimony of the arresting officer, a stipulation to a prior offense, and a statement from that officer that the gun was test fired and found to be operable.

The testimony of the arresting officer, Lieutenant William Bakkar, revealed that at about five o'clock on the morning of June 29, 1989 he was participating in a "ride along"[1] with a police dispatcher, Jay Schwartzwilder. The officer was responding to a fire in the vicinity of Whitney and Russell Streets to determine if a traffic detail was needed to assist the firemen. Because the

---

1. A ride along is a program in the Cleveland Police Department where approved persons can ride along on a tour of duty with a police officer.

fire department had sufficiently blocked off the street, it was determined that the traffic detail was not necessary.

The officer and dispatcher were approached by a black male while at the corner of Whitney and Russell, who gave them some information. The information that was given is not clear from the transcript because it was objected to on hearsay grounds. Nevertheless, based on that information, the officer's attention was drawn to a 1977 Buick, which he began to follow. The vehicle was ultimately stopped by the officer, after a radio check revealed that the license plates were expired. The officer believed that the two males in the vehicle had a weapon, presumably based on the information received earlier.

The officer stopped the suspect vehicle and placed a zone car spotlight and high beams on the vehicle to illuminate it. As the officer began to exit his vehicle, the appellant, who was driving, opened the door quickly on the driver's side of the vehicle and came out of the car extremely fast. The officer drew his weapon, ordered the appellant to "freeze," and the passenger inside to place his hands on the dashboard and not to move.

The officer testified that the dispatcher also exited the zone car with a large flashlight and was able to watch the movement of the male passenger inside the car. However, the dispatcher did not testify at the trial.

The arresting officer, after a pat-down search of the appellant, placed him in the rear of the zone car and returned to the vehicle. The officer testified that the dispatcher was standing back and he kept an eye on what was going on at the suspect vehicle, while walking the appellant to the zone car. He then returned to the vehicle and removed the passenger, being careful to make sure that he did not make any abrupt movements. The passenger was also placed in the zone car.

At this point, the officer returned to the vehicle and observed an Afghan blanket on the front seat of the car. According to the officer's recollection, the Afghan covered the right side of the seat and went almost all the way to the driver's side. His recollection was that it did not completely cover the driver's seat. Upon checking underneath the blanket, the officer found a loaded .38 caliber revolver. He testified that the gun was found to the right of where the appellant had been sitting. After checking both the appellant and the passenger for warrants, the officer arrested the appellant for carrying a concealed weapon and released the passenger. The appellant, according to the officer's testimony, denied ownership of the weapon but admitted to being in the area to buy some crack cocaine.

The cross-examination of the police officer was noteworthy, and during the cross-examination certain facts were revealed. The officer testified that a person could reach across the front seat of the car. The vehicle was not

registered to the appellant nor were the license plates. Cross-examination also revealed that there was approximately one minute during which the passenger was in the vehicle alone. The officer also testified that his attention during that minute was essentially on the appellant. The officer testified that the gun registration was unattainable and that he was, thus, unable to determine ownership of the gun. The officer further testified that the gun was not fingerprinted. While the officer did recall the appellant's denial of ownership of the gun, he did not recall the appellant requesting that the gun be fingerprinted. The officer also testified that even though he was aware of certain tests that can be run to determine if a citizen handled a gun, these tests were not conducted.

Finally, the officer testified that even though the gun was found between both men, he chose to release the passenger without any formal identification, fingerprinting, or any tests to determine if the passenger had handled the weapon.

After this testimony, the admission of the gun, and the statement that it was operable, the trial court found the appellant guilty of both charges. The appellant, in the exercise of his Fifth Amendment right, did not testify.

For his sole assignment of error, the appellant states:

"The evidence is constitutionally insufficient to sustain the appellant's convictions of carrying a concealed weapon and having a weapon while under disability."

An analysis of this assignment of error requires this court to apply the new rule regarding circumstantial evidence espoused in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492.

In *Jenks*, the Ohio Supreme Court overruled *State v. Kulig* (1974), 37 Ohio St.2d 157, 66 O.O.2d 351, 309 N.E.2d 897, and its progeny, by holding that "when the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.*, 61 Ohio St.3d at 273, 574 N.E.2d at 503.

In addition, the Ohio Supreme Court held in *Jenks* at 273, 574 N.E.2d at 503, as follows:

"We therefore hold that where the state relies on circumstantial evidence to prove an element of the offense, and where the jury is properly instructed on the standards for reasonable doubt, an additional instruction on circumstantial evidence is not required. *Once the jury is properly instructed as to the heavy burden the state bears under the 'guilt beyond a reasonable doubt'*

*standard, the jury is then free to choose between competing constructions of the evidence."* (Emphasis added.)

The Ohio Supreme Court went on to say that "an appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *Id.*

█ There are two definitions that are particularly germane to a new approach to cases based largely on circumstantial evidence. The first is an accurate definition of circumstantial evidence and an understanding of its mechanics. The second is an accurate definition of beyond a reasonable doubt. Consequently, we are compelled to reiterate those definitions. "Circumstantial evidence" is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably follow according to the common experience of mankind. Black's Law Dictionary (5 Ed.1979) 221.

█ It is not essential that there should be a mathematical demonstration or direct evidence of every essential fact in a case, but the circumstances, to have the effect of establishing an allegation of fact, must be such as to make the fact alleged appear more probable than any other; the fact in issue must be the most natural inference from the facts proved; it is not sufficient if the conclusion must rest wholly upon guess or conjecture. 44 Ohio Jurisprudence 3d (1983), Section 1023.

The second crucial definition, in this analysis, has to do with the burden of proof in a criminal case. The definitions of "reasonable doubt" and "proof beyond a reasonable doubt" are codified in R.C. 2901.05(D):

" 'Reasonable doubt' is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. 'Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs."

Having cited the definitions of "circumstantial evidence" and "reasonable doubt," along with a statement about the mechanics of circumstantial evidence, we must now apply them to the instant appeal. This must be done in conjunction with the relevant inquiry put forth in *Jenks*. This court must examine the evidence admitted at trial to determine whether such evidence, if

believed, would convince the average mind of the appellant's guilt beyond a reasonable doubt. *Id.*

■ The elements of carrying concealed weapons are: (1) no person shall (2) knowingly carry or have (3) concealed on his person or (4) concealed ready at hand (5) any deadly weapon or dangerous ordnance.

■ The prosecution did not prove the second element of the offense beyond a reasonable doubt, that is, "knowingly carry or have." The evidence on this element was purely circumstantial and did not meet the burden of proof beyond a reasonable doubt.

The rationale of the trial court is less than convincing and is not an inference that usually and reasonably follows from the proven facts. The trial court starts by reasoning that if the appellant was in that neighborhood to buy drugs at that time of night the court would be amazed that he did not have a gun. The trial court then states: "the inference is based on the fact * * * white males being in a probable ninety-five percent black poor neighborhood, high crime area at five o'clock in the morning driving around. These are under these circumstances in life, these are two very vulnerable people."

This court is not persuaded by this inference. There is nothing in the record that either establishes or creates a reasonable inference that the appellant knowingly carried or had the gun, *beyond a reasonable doubt.*

Reasonable doubt is created by a contemplation of competing constructions of the evidence. The appellant did not own the vehicle. The gun was found in a location between the passenger and driver even though somewhat closer to the driver. It was just as ready at hand to the passenger as the appellant. The passenger was left in the vehicle alone for approximately one minute and could have just as easily slid the gun under the blanket. There were no fingerprints or other scientific tests conducted that would have conclusively proven whether the appellant had the gun.

These are all competing constructions of the evidence that establish a reasonable doubt as to whether the appellant knowingly carried or had the weapon. It is a competing construction of the evidence, which is just as plausible, that the passenger had the weapon and the appellant had no knowledge of it. This court must be clear to point out that this is not an attempt to make the evidence irreconcilable with any reasonable theory of innocence. It is, instead, an evaluation of the competing constructions of the evidence to determine whether each and every element of the crimes was proven beyond a reasonable doubt. In so doing, we must conclude that it was not proven beyond a reasonable doubt that the appellant knowingly carried or had the weapon.

Finally, we are persuaded by the rationale in the case of *State v. Hardy* (1978), 60 Ohio App.2d 325, 14 O.O.3d 289, 397 N.E.2d 773, from this court.

In *Hardy*, the appellant was charged with having a weapon while under disability, in violation of R.C. 2923.13. The appellant, in *Hardy*, was an employee in a beverage store in Cleveland, Ohio. Hardy was approached by another employee of the store, who claimed that he needed money for rent. Hardy informed the employee that even though it was not payday he would give him an advance at the end of the day. The employee was not satisfied and an altercation ensued that resulted in Hardy picking up a rifle located in the corner and wounding the employee.

This court, applying the rule that in order to "have" a firearm, one must either actually or constructively possess it, found that Hardy did not have the weapon prior to the point when he grabbed it. This court wrote at 327, 14 O.O.3d at 290, 397 N.E.2d at 775:

"The facts in the case at bar demonstrate only that appellant, along with other employees, had knowledge of and physical access to a loaded rifle. The record fails to disclose any evidence demonstrating that appellant ever exercised dominion or the sort of control over the weapon that comes with ownership or actual possession. Nor was there a showing that the unidentified owner had ever given appellant permission to use the weapon."

In footnote 3 regarding this paragraph, this court expounded on its rationale and the state of the record:

"The record does not contain any direct evidence of ownership, possession or control of the weapon by the appellant. The extent of the circumstantial evidence is contained in a statement made by appellant to the police in which he admitted knowledge that the rifle was 'always ready to fire.' This evidence, however, is insufficient on which to base a finding that the weapon was actually or constructively possessed by the appellant. There are other reasonable explanations for knowledge concerning the readiness of the rifle for firing; *e.g.,* he could have been informed of this fact by the store owner, or he may have seen the owner or other employees use the weapon.

"It may well be that if further evidence had been adduced, the prosecutor could have developed a case establishing that appellant 'had' the weapon. However, with the record in this posture, such a conclusion is not the only reasonable inference which could be drawn." *Id.*

In the instant case, the record does not contain any direct evidence of Duganitz's ownership, possession, or control of the weapon. The extent of the circumstantial evidence, in this case, is first that the appellant exited the car quickly. The appellant was the driver of the car. He allegedly made a

statement that he was in the area to buy some crack cocaine. The time was approximately five o'clock a.m. The appellant also denied ownership of the weapon. The weapon was found in a place in the car accessible to both the appellant and passenger.

This evidence, like the evidence in *Hardy*, is not sufficient to find that the appellant either actually or constructively possessed the weapon. In fact, there is no direct evidence of knowledge of the weapon in this case, like there was in *Hardy*.

Also, as in *Hardy*, it may well be that if further evidence had been adduced the prosecution could have established that Duganitz had the weapon. The admission of fingerprints, scientific testing, or even the testimony of the dispatcher. However, as stated in *Hardy*, with the record in this posture, the conclusion that Duganitz had the weapon is not proven beyond a reasonable doubt.

*Judgment reversed.*

HARPER, J., concurs.

PATTON, P.J., dissents.

PATTON, Presiding Judge, dissenting.

I respectfully dissent. I believe that appellant's assignment of error lacks merit and that the evidence adduced at trial was sufficient to sustain his convictions for carrying a concealed weapon and having a weapon while under disability. Thus, I would affirm the trial court's finding of guilt.

Appellant maintains the evidence is insufficient to sustain his convictions in light of its circumstantial nature. He contends the circumstantial evidence relied upon to prove possession of the weapon is not irreconcilable with a reasonable theory of his innocence. Specifically, he argues the evidence is equally consistent with the passenger having possessed the weapon without appellant's knowledge. For the following reasons I would find appellant's contentions lack merit.

A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proved the offense beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132. The test for sufficiency review is set forth in *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 218–19, 485 N.E.2d 717, 720–721:

"As to the claim of insufficient evidence, the test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found

all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence. *Jackson v. Virginia* (1979), 443 U.S. 307, 319 [99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573]." (Citations omitted.)

Very recently the Supreme Court of Ohio espoused a new rule regarding the use of circumstantial evidence in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The Supreme Court held:

"Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof. When the state relies on circumstantial evidence to prove an essential element of the offense charged, there is no need for such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Id.* at paragraph one of the syllabus.

In light of the Supreme Court's recent pronouncement in *Jenks*, I would find there was sufficient circumstantial evidence to convict the defendant of carrying a concealed weapon and having a weapon while under disability.

In the instant case, the defendant and his passenger were out at 5:00 a.m. for the purpose of buying crack cocaine. When stopped by the police, the defendant immediately exited his vehicle in a quick manner. Such conduct could reasonably be interpreted by a trier of fact as an attempt to divert the officer's attention from the inside of the vehicle. Furthermore, the gun was discovered under the blanket on the left-side portion of the front seat directly beside the driver's seated position.

Based upon my review of the record, I find that the circumstantial evidence produced at trial was sufficient to infer beyond a reasonable doubt that the appellant possessed the requisite knowledge of the gun's presence in the vehicle. See *State v. Lowry* (Aug. 9, 1990), Cuyahoga App. No. 55082, unreported, 1990 WL 115377 (sufficient evidence where gun was found in the back seat of an automobile in which defendant was a passenger).

Accordingly, after viewing the evidence in a light most favorable to the prosecution, I conclude a rational trier of fact could have found all the essential elements of the offenses beyond a reasonable doubt. Thus, I would affirm appellant's convictions.