OPINION
{¶ 1} At approximately 12:30 a.m. on December 31, 2000, appellant, Montago M. Burgess, and two passengers, Lyman Gray and Thomas Hall, were traveling west on Interstate 90. Officer Thomas Lanning of the Willoughby Hills Police Department observed the vehicle exit onto Route 91, approach a red light, and make a right turn without fully stopping. After stopping the vehicle for the traffic violation, the officer approached the vehicle from the rear passenger side.
 {¶ 2} Officer Lanning first observed a male passenger, Thomas Hall, sitting across the back seat. Hall was looking over his shoulder in the opposite direction from which the officer was approaching. Lanning noticed Hall's hand emerge from underneath a jacket which was covering his legs. Lanning ordered Hall to raise his hands and the passenger complied.
 {¶ 3} While Lanning addressed Hall, appellant and the front seat passenger, Lyman Gray, were exchanging glances and possibly conversing. Officer Lanning testified that appellant gestured as though he was about to bend down. Lanning, fearing for his safety, then ordered appellant and the front seat passenger to put their hands where he could see them.
 {¶ 4} Lanning advised appellant of the reason for the stop and asked appellant for his driver's license. As Lanning looked in the window, he noticed a box cutter with its blade exposed resting on appellant's lap. Appellant explained that he was using the knife to clean his nails. At the officer's behest, appellant placed the box cutter on the dashboard. As appellant retrieved his driver's license with his right hand, Officer Lanning observed appellant leaning with his left hand as if he were reaching below the seat. The officer again advised appellant to keep his hands in view. Appellant complied and provided the officer with his license.
 {¶ 5} After obtaining the license, Officer Lanning testified that he called for back-up assistance as the behavior of the vehicle's occupants made him suspicious. While waiting for back-up, Officer Lanning watched the vehicle and noticed no movements from the occupants. The officer then informed his dispatcher of the name on the driver's license, i.e., "Chazz M. Burgess," and the general physical description of the driver. Dispatch advised the officer that the name Chazz Burgess was valid; further, in combing the registration, dispatch also indicated that the name Montago M. Burgess, appellant's name, also appeared. Dispatch stated that Montago M. Burgess had warrants for his arrest, was driving under suspension, and had a registration block. As far as we can discern, an arrest was not made at this point because Lanning could not conclusively identify the driver as Montago M. Burgess.
 {¶ 6} When two back-up officers arrived, Officer Lanning informed them of what had transpired. Officer Lanning then approached the vehicle and requested appellant to exit. Lanning conducted a protective pat-down search of appellant and informed him that he wished to search the vehicle based on the movements he observed. Appellant, who appeared nervous, indicated that he did not understand the need for the search. Lanning stated that he believed there may be a weapon in the car. Appellant hesitated but declared that there should be no weapons in his car. Officer Lanning handcuffed appellant and placed him in his cruiser while he searched the vehicle. Before conducting the search, Hall and Gray were ordered out of the vehicle and patted-down for weapons.
 {¶ 7} During the search, Lanning noticed the butt-end of a .45 caliber Llama handgun under the front passenger's seat. Lanning testified that the gun, although located under the passenger's seat, was within appellant's reach. Hall and Gray were immediately arrested for carrying a concealed weapon but both denied any knowledge of the firearm. Appellant also claimed to have no knowledge of the gun.
 {¶ 8} Officer Lanning then discovered a loaded Beretta 92F-9mm semi-automatic handgun underneath the jacket which formerly covered Hall's legs and hands. Officer Lanning testified that this gun was also within appellant's reach. In addition to the weapons, Officer Lanning discovered a day planner and an Ohio identification card with a photo of appellant and his correct name listed. Appellant then admitted that he was Montago Burgess and Chazz Burgess was his three year old son.
 {¶ 9} Some nine days later, on or about January 8, 2001, appellant signed a letter stating that Gray, the front seat passenger, knew nothing about the firearms in the car. Tomeka McMillen, a notary, testified at trial that she personally notarized the document.[1]
 {¶ 10} Appellant was charged with carrying a concealed weapon, a felony of the fourth degree and having weapons while under disability, a felony of the third degree, with a firearm specification. Appellant entered a plea of not guilty on both counts. On August 28, 2001, appellant filed a motion to suppress all physical and testimonial evidence. Appellant's motion was denied after a September 21, 2001 hearing. The matter proceeded to a jury trial where the jury found appellant guilty on both counts. The trial court sentenced appellant to a term of twelve months on each count, those terms to run concurrently; the trial court further sentenced appellant to an additional twelve month sentence for the firearm specification to be served prior to and consecutively with the other sentences.
 {¶ 11} Appellant now appeals assigning the following three errors for our consideration:
 {¶ 12} "[1.] The trial court erred by failing to grant appellant's motion to suppress.
 {¶ 13} "[2.] The evidence was insufficient to support appellant's convictions of carrying a concealed weapon and having a weapon while under disability.
 {¶ 14} "[3.] The appellant's convictions for carrying a concealed weapon and having a weapon while under disability are against the manifest weight of the evidence."
 {¶ 15} An appellate court reviews a trial court's denial of a motion to suppress de novo. State v. Curry (1994),95 Ohio App.3d 93, 96. When reviewing a trial court's ruling on a motion to suppress, we bear in mind that the trier of fact is the judge of evidential weight and witness credibility. State v.Retherford (1994), 93 Ohio App.3d 586, 592. We are therefore bound to accept the trial court's factual determinations if they are supported by competent and credible evidence. State v.Molk, 11th Dist. No. 2001-L-146, 2002 Ohio 6926, at ¶ 9. Accepting those facts as true, we then independently determine, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Id.
 {¶ 16} Appellant's first assignment of error concerns the chain of events which led to the discovery of the firearms within appellant's vehicle. The issue in this assignment of error is whether the trial court erred by refusing to grant his motion to suppress evidence. Appellant contends that the arresting officer illegally searched his vehicle because he did not have a reasonable belief that appellant was armed and dangerous; consequently, the officer did not have justification to execute the protective search which uncovered the firearms.
 {¶ 17} At the suppression hearing, the state argued that the seizure of the firearms was proper because the evidence was found after a legitimate protective search of the automobile. The arresting officer testified that he became concerned for his safety due to various furtive gestures of appellant and his rear passenger. Moreover, the officer testified to the presence of a box cutter with the razor exposed in plain view as well as appellant's nervousness at the prospect of having his car searched for weapons.
 {¶ 18} Appellant properly notes that general claims of furtive movements, standing alone, are insufficient to render an officer's suspicions about criminal activity or the possession of weapons reasonable. State v. Kessler (1978), 53 Ohio St.2d 204,208; see, also, State v. Severino (May 19, 2000), 11th Dist. No. 99-L-052, 2000 Ohio App. LEXIS 2136, at 6. That said, however, the Supreme Court of Ohio has held that furtive movements are factors which may contribute to an officer's suspicion that a suspect is armed or engaged in criminal activity. State v. Bobo (1988), 37 Ohio St.3d 177, 180;Kessler, supra, at 209. In commenting on the legitimacy and scope of protective searches, the Supreme Court of the United States has noted: "So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose." Adams v. Williams (1972),407 U.S. 143, 146.
 {¶ 19} In the current matter, testimony established that the officer pulled appellant over for a legitimate traffic violation. During the stop, the officer noticed the rear passenger (Hall) sitting across the back seat with a coat over his hands and legs. After observing Mr. Hall removing his hand from under the coat, the officer advised Hall to place his hands where the officer could see them. During this exchange, the officer noticed appellant and his front seat passenger (Gray) either whispering or making eye contact in a suspicious fashion. The officer then requested the two men in the front to keep their hands in his view.
 {¶ 20} The officer asked appellant for his driver's license; as appellant leaned to the right, across the passenger seat, to hand the officer the driver's license, appellant's left hand allegedly dropped to the floor. The officer again advised appellant to keep his hands visible. Moreover, during this exchange, the officer noticed a "box cutter" on appellant's lap with the blade exposed. After instructing appellant to put the box cutter on the dashboard, the officer called for backup assistance due to his concerns for his own safety.
 {¶ 21} The officer ultimately advised appellant of his intent to search the vehicle for weapons. According to the officer, appellant appeared nervous and stated that he did not understand the reason for the search and that there "should" be no weapons in the car. From these facts, we believe the protective search was justified.
 {¶ 22} Police officers must be able to protect their own safety. Michigan v. Long (1983), 463 U.S. 1032, 1051. A protective search is permitted so that the officer may discover weapons on or near a suspect which might pose a threat to the officer's safety. State v. Jackson (1996), 110 Ohio App.3d 137,141. Therefore, it would be unreasonable to deny an officer the ability to take necessary measures to determine whether a suspect is carrying a weapon where the officer has a reasonable belief that the suspect is armed and dangerous. Michigan, supra.
 {¶ 23} In its judgment entry, the trial court stated:
 {¶ 24} "Patrolman Lanning conducted a valid stop of the Defendant's vehicle after Defendant committed a traffic violation. He then observed the box cutter, a potentially deadly weapon, in close proximity to Defendant, and further observed furtive gestures by Defendant and the other vehicle passengers. In view of these circumstances, together with consideration of Defendant's remarks when told the vehicle would be searched, it was objectively reasonable for the officer to conduct a search based on his belief that Defendant may have had weapons in close proximity."
 {¶ 25} The trial court did not err in denying appellant's motion to suppress. Appellant's first assignment of error is without merit.
 {¶ 26} In his second assignment of error, appellant attacks the sufficiency of the evidence on which his dual convictions were based. Appellant raises two issues under this assignment: First, appellant takes issue with the state's alleged failure to prove the scienter requirement of carrying a concealed weapon. Next, appellant contends that the state failed to prove that appellant "possessed" weapons under disability.
 {¶ 27} In reviewing whether evidence was sufficient to support a conviction, an appellate court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273. "[T]he relevant inquiry does not involve how the appellate court might interpret the evidence." Id. Rather, the question is, after viewing the evidence in a light most favorable to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 28} To prove that appellant was carrying a concealed weapon, the state was required to demonstrate that appellant knowingly carried or had a concealed deadly weapon or dangerous ordnance on his person or concealed ready at hand See, R.C.2923.12(A). Appellant argues that the state failed to prove the "knowingly" element of the crime.
 {¶ 29} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 30} Appellant analogizes the current matter with the Eighth District Court of Appeals' decision in State v. Duganitz
(1991), 76 Ohio App.3d 363. In Duganitz, the court found that the prosecution had not proved the defendant had knowledge of a concealed firearm found under an afghan in the car he was driving. In reversing the trial court's conviction, the appellate court stated:
 {¶ 31} "Reasonable doubt is created by a contemplation of competing constructions of the evidence. The appellant did not own the vehicle. The gun was found in a location between the passenger and the driver even though somewhat closer to the driver. It was just as ready at hand to the passenger as the appellant. The passenger was left in the vehicle alone for approximately one minute and could have just as easily slid the gun under the blanket. There were no fingerprints or other scientific tests conducted that would have conclusively proven whether appellant had the gun." Id. at 368.
 {¶ 32} The court concluded that these competing constructions of the evidence establish a reasonable doubt as to whether the appellant knowingly carried or had the weapon.
 {¶ 33} Duganitz is similar to the current matter in some basic respects, e.g., the weapons in Duganitz, as in the instant case, were accessible to both the defendant and the passenger(s); moreover, the defendant in Duganitz, like appellant herein, denied knowledge of any weapon(s). Further, there were no fingerprints discovered on any weapons in either case. However, while the defendant in Duganitz was not the registered owner of the vehicle in that case, appellant's vehicle was registered to "Chazz Burgess," i.e., the name of appellant's toddler son as well as the alias appellant used on his false driver's license. Moreover, unlike Duganitz, Officer Lanning never left the passengers alone in the vehicle without supervision. These distinctions are significant and material. Although we acknowledge certain factual similarities, the facts separating the cases serve to clearly distinguish each case from the other. That is, the absence of certain facts present inDuganitz demonstrates that the current case is not a direct analogy to Duganitz. As such, we decline appellant's invitation to reverse pursuant to Duganitz.
 {¶ 34} Nevertheless, appellant argues that the state failed to prove that he "knowingly carried or had" the weapons because the firearms were neither near nor on his person. As such, appellant contends that the state offered only loose circumstantial evidence to demonstrate that he knew that the firearms were in his vehicle. Although appellant speculates on other possible evidential constructions, we do not think his speculations justify setting aside the lower court's verdict. In effect, once a jury has reached a verdict, a reviewing court, in a case where circumstantial evidence is relied upon, will reverse only where the evidence is insufficient as a matter of law to enable the jury to exclude a reasonable hypothesis of innocence.State v. Lott (1990), 51 Ohio St.3d 160, 168. We believe the state's evidence was sufficient to support the verdict.
 {¶ 35} In proving that appellant had knowledge of the firearms, the state made the following inductive argument: Appellant was the owner of the vehicle in which the firearms were found and appellant knew his passengers. Further, although the guns were hidden, they were large and not likely to go unnoticed in appellant's vehicle. Finally, subsequent to his arrest, appellant signed a notarized letter stating that the passenger Gray knew nothing of the firearms found in the vehicle. If appellant attested to the fact that Gray knew nothing about the weapons, then, by implication, the state argued, appellant must have known that the weapons were in the vehicle. Based on this evidence, the state submitted that appellant knew the firearms were in his vehicle.
 {¶ 36} As a structural matter, the premises of an argument based upon circumstantial evidence must be logically related to the conclusion in such a way that if the premises are true, the conclusion is likely to be true as well. In other words, it is not enough that the premises be true; they must also be relevant to the conclusion. The logical strength of such an argument is therefore assessed in terms of the degree of support that the premises confer on the conclusion.
 {¶ 37} In the current matter, the state's argument offers strong support for the inference that appellant "knowingly had or carried" the firearms in question. Although appellant offers alternative interpretations of the evidence, his constructions do not lessen the strength of the interpretation gleaned by the jury from the evidence presented by the state. As trial courts often note, proof beyond a reasonable doubt does not mean proof beyond any doubt. Moreover, "[w]hile inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts * * *" Lott, supra, at 168.
 {¶ 38} Here, appellant's theory provides a possible
alternative construction of the evidence that, if believed, might nullify the conclusion that he "knowingly had or carried" the weapons. However, we do not think this possibility is enough to create reasonable doubt in light of the evidence submitted at trial. We therefore conclude that the state presented sufficient evidence to support, beyond a reasonable doubt, the conviction for carrying a concealed weapon.
 {¶ 39} Next, appellant contends that his conviction for having weapons under disability is not supported by sufficient evidence. Specifically, appellant argues that the state failed to present evidence of appellant's ownership, possession, or control of the weapons. We disagree.
 {¶ 40} In order to "have" a weapon, one must either actually or constructively possess it. There was no evidence that appellant actually possessed the firearms at the time of the arrest. As such, the state was required to prove that appellant exercised constructive possession over the firearms. "Constructive possession exists when an individual exercises dominion and control over an object, even though the object may not be within his immediate physical possession." State v.Wolery (1976), 46 Ohio St.2d 316, 329.
 {¶ 41} In the current matter, the state offered evidence that the vehicle in which the firearms were found belonged to appellant and was being operated by him at the time of the stop. The state offered testimony, and appellant ostensibly concedes, that the firearms were "ready at hand" or within appellant's access. It has been held that mere access to a weapon can establish guilt. See, e.g., State v. Najeway, 9th Dist. No. 21264, 2003-Ohio-3154, at ¶ 10. Under these circumstances, a rational trier of fact could conclude that appellant had constructive possession of the firearms, i.e., he was able to exercise dominion and control over them. We conclude that the state presented sufficient evidence to support the conviction for having weapons under disability.
 {¶ 42} Appellant's second assignment of error is not well taken.
 {¶ 43} In his final assignment of error, appellant contends that his convictions for carrying a concealed weapon and having a weapon while under disability are against the manifest weight of the evidence.
 {¶ 44} A court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 5.
 {¶ 45} As our analysis under the preceding assignment of error reflects, the jury did not unduly or improperly weigh the evidence. Therefore, after reviewing the record and testimony presented at trial, we cannot find that the jury's verdict created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.
 {¶ 46} Appellant's third assignment of error is without merit.
 {¶ 47} For the above reasons, appellant's three assignments of error are without merit and the conviction of the Lake County Court of Common Pleas is hereby affirmed.
O'Neill, J., Grendell, J., concur.
[1] At trial, Ms. McMillen testified that she witnessed appellant sign the document. This testimony is significant, the state argued, because if appellant attested to the fact that Gray knew nothing about the weapons, then, by implication, appellant must have known that the weapons were in the vehicle. This argument, in conjunction with other facts, was utilized to help prove the scienter prong of the carrying a concealed weapon charge.