OPINION
{¶ 1} Appellant, Jason R. Thomas, appeals from a Lake County Court of Common Pleas jury verdict convicting him of theft. We affirm.
 {¶ 2} On February 16, 2004, Steve Dille, a loss prevention officer for Wal-mart, observed an individual, later identified as Josh Bish, removing a microwave oven from its packaging. According to Dille, after Bish removed the appliance, he placed its box at the bottom of a shopping cart, which was "padded" with clothing and other items concealing the box. Bish pushed the cart to an area of the store where DVDs were sold. Bish proceeded to remove magnetic alarm strips from DVD box sets and fill the microwave box with the DVDs. Overall, Bish placed some 40 DVD box sets in the microwave box, the total value of which was estimated at $2408. After filling the box, Bish obtained packing tape from the hardware department and sealed it. Dille testified the tape was put on with great haste and sloppiness, what he described as a "hack job." Bish eventually placed the box on a bottom shelf of the "small wares" department and exited the store. Dille testified he continued to watch the box in expectation of Bish returning.
 {¶ 3} Meanwhile, Bish had phoned his then-girlfriend Pamela Brown and asked her to pick him up from Wal-Mart. Brown retrieved Bish from Wal-Mart; Bish then asked her to drive him to appellant's residence. Brown agreed; after arriving at appellant's house, Brown remained in her vehicle while Bish, appellant's friend and former roommate, entered. Approximately a half-hour later, Bish and appellant exited the house and had a conversation directly outside Brown's vehicle. Brown testified she did not know what the men were discussing.
 {¶ 4} Both men entered Brown's vehicle and asked her to take appellant to the Wal-Mart from which Brown and Bish had just returned. Upon their arrival, Bish and appellant conferred with one another outside of Brown's earshot. Bish then asked Brown to return three video games at Wal-Mart's merchandise return desk. Brown agreed, retuned the games, and received a gift card. Unbenounced to Brown, the games had been stolen from the store several days earlier. Brown gave Bish the gift card and returned to her car leaving Bish and appellant in the store.
 {¶ 5} After watching the box for approximately forty-five minutes, Dille observed Bish and appellant meander toward the shelf on which the box sat. Bish pointed to the box which appellant then placed in a shopping cart. At that point, Bish went to the front of the store while appellant went to the electronics department to retrieve a home entertainment system, which included a DVD player. Appellant went through the check-out line and, using the gift card, purchased the would-be microwave and home entertainment system for $137.18. After passing all points of purchase, Dille, with store management, and several police officers, stopped appellant as he exited the store. Appellant was then arrested.
 {¶ 6} Appellant ultimately gave a statement where he indicated Bish asked him to buy a microwave and a surround DVD system with a gift card. According to appellant, Bish offered him some money to do so. Appellant agreed to make the purchase for Bish who showed him the microwave to buy and the DVD surround sound system. Appellant denied he had any knowledge that Bish had filled the microwave box with DVDs.
 {¶ 7} On March 31, 2004, appellant was indicted on one count of theft, in violation of R.C. 2913.02(A)(3), a felony of the fifth degree. The matter proceeded to jury trial on August 18, 2004 and, on the same day, appellant was found guilty. On August 31, 2004, appellant filed a motion for a new trial and a motion to set aside the verdict and order judgment of acquittal. On September 8, 2004, the state filed its response motion. On September 14, 2004, the trial court denied appellant's motions. On September 23, 2004, appellant was sentenced to three years of community control.
 {¶ 8} Appellant now appeals and asserts two assignments of error for our review:
 {¶ 9} "[1.] The verdict finding appellant guilty of theft is against the manifest weight of the evidence.
 {¶ 10} "[2.] The trial court erred as a matter of law in denying appellant's motion for acquittal pursuant to Rule 29 of the Ohio Rules of Criminal Procedure."
 {¶ 11} We shall address appellant's assigned errors in reverse order. In his second assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion because the state failed to set forth sufficient evidence to sustain the jury's verdict. In particular, appellant argues the state failed to prove he knowingly deprived Wal-Mart of property.
 {¶ 12} In reviewing whether evidence was sufficient to support a conviction, an appellate court's function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273. "[T]he relevant inquiry does not involve how the appellate court might interpret the evidence." Id. Rather, the question is, after viewing the evidence in a light most favorable to the prosecution, whether the jury could have found the essential elements of the crime proven beyond a reasonable doubt. Id. Circumstantial evidence and direct evidence inherently possess the same probative value, even when used to prove essential elements of an offense. Id. at 272.
 {¶ 13} Appellant was convicted of theft pursuant to R.C.2913.02(A)(3), which provides:
 {¶ 14} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 15} "* * *
 {¶ 16} "(3) By deception;"
 {¶ 17} R.C. 2901.22 provides:
 {¶ 18} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} Finally, R.C. 2913.01(A) defines "deception" as:
 {¶ 20} "* * * knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."
 {¶ 21} The state was charged with proving, beyond a reasonable doubt, appellant knowingly obtained or exerted control over the DVDs in question with the purpose to deprive Wal-Mart by means of deception.
 {¶ 22} At trial, Dille testified he personally observed Bish enter the store, remove the microwave from the box, fill the box with DVDs from which he had removed the magnetic alarm strip, and haphazardly re-seal the box with packing tape. Dille further testified Bish placed the box on a bottom shelf in an aisle not for microwaves, but for "small ware," such as coffeemakers and the like. After Bish left, Dille personally monitored the box. Dille testified the box was much heavier than it had been with the microwave in it.
 {¶ 23} Brown testified, after retrieving Bish from Wal-Mart, Bish requested Brown to take him to appellant's residence. Brown testified Bish spent thirty minutes inside appellant's house and, after exiting, conferred outside her car. Immediately thereafter, the men asked Brown to take them back to Wal-Mart. Upon their arrival, Bish and appellant again conferred outside Brown's car.
 {¶ 24} Approximately forty-five minutes after Bish left, Dille observed Bish return with appellant. Bish led appellant to the "small wares" aisle and pointed out the box to appellant. Dille monitored appellant with the box as he passed through all points of purchase and exited with it under his control.
 {¶ 25} When viewed in a light most favorable to the state, we believe adequate circumstantial evidence was presented to demonstrate appellant knowingly exerted control over the box containing DVDs with the purpose to deprive Wal-Mart by means of deception. In other words, the state put forth sufficient evidence to allow a reasonable jury to find appellant was guilty of theft by deception. Appellant's second assignment of error is overruled.
 {¶ 26} Under his first assignment of error, appellant argues the jury's verdict was not supported by competent credible evidence and is therefore against the manifest weight of the evidence.
 {¶ 27} Evidential weight concerns the inclination of the greater amount of credible evidence, offered at trial, to support one side of the issue rather than the other. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. If, on weighing the evidence, the jury finds the greater amount of credible evidence sustains the issue that a party seeks to establish, that party will be entitled to its verdict. "Weight is not a question of mathematics, but depends upon its effect in inducing belief." Id., citing Black's Law Dictionary (6th ed. 1990), 1594. Thus, a court reviewing the manifest weight observes the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way. Statev. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at 14-15.
 {¶ 28} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983),20 Ohio App.3d 172, 175. Hence, the role of a reviewing court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. State v. Brown, 11th Dist. No. 2002-T-0077, 2003-Ohio-7183, at ¶ 52, citing Thompkins,
supra, at 390. However, an appellate court must defer to the factual findings of the jury regarding the weight to be given the evidence and credibility of the witnesses. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 29} When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. To be sure, the factfinder is free to believe all, some, or none of the testimony of each witness appearing before it. Brown, supra, at ¶ 53. Moreover, if the evidence admits to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id. "As trial courts often note, proof beyond a reasonable doubt does not mean proof beyond any doubt." State v.Burgess, 11th Dist. No. 2002-L-019, 2004-Ohio-3338, at ¶ 37. Moreover, "`[w]hile inferences cannot be built on inferences, several conclusions can be drawn from the same set of facts * * *.'" Id., citing, State v. Lott (1990), 51 Ohio St.3d 160, 168.
 {¶ 30} In the instant matter, the jury was in the best position to view the witnesses and determine their credibility. While appellant exercised his right not to testify, his statement to police was submitted into evidence. Appellant's statement indicated Bish asked him to purchase a microwave. Appellant stated Bish even agreed to pay him for executing the ostensibly legal transaction. At the bottom of the statement, appellant asserted he "did not know what was in the micro-wave [sic] box!" This statement is in direct competition with the state's theory; nevertheless, the jury found the state's theory more credible. While the state's evidence was circumstantial in nature, there is nothing to indicate that the testimony given by the state's witnesses lacked fundamental credibility. Therefore, after reviewing the record and testimony presented at trial, we cannot find that the jury's verdict created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered.
 {¶ 31} Appellant's first assignment of error is without merit.
 {¶ 32} For the above reasons, appellant's two assignments of error are without merit and the judgment of the Lake County Court of Common Pleas is hereby affirmed.
O'Neill, J., O'Toole, J., concur.