JOURNAL AND OPINION
{¶ 1} D.S. appeals from his adjudication of delinquency received in the Cuyahoga County Common Pleas Court, Juvenile Division. D.S. argues the State of Ohio ("State") failed to support his adjudication of delinquency with sufficient evidence, and the trial court's adjudication of delinquency was against the manifest weight of the evidence. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} On February 22, 2006, Cleveland Police Officer Lawayne Smith ("Officer Smith") received a call to respond to the area near East High School, located at East 79th Street and Superior Avenue in Cleveland, Ohio, in connection with a report of numerous fights and a group of young males with guns getting out of *Page 2 
a blue Chevrolet Cavalier. Officer Smith arrived and originally observed a Cavalier
matching the description parked on East 77th Street and then later observed the vehicle as it traveled east on Superior Avenue, away from the area of East High School. Officer Smith activated his lights and overhead sirens and stopped the vehicle at East 89th Street and Superior Avenue.
 {¶ 3} Officer Smith approached the driver, Charon Samilton ("Samilton"), born August 25, 1986, and asked him for his driver's license. When Samilton responded that he did not have a driver's license, Officer Smith removed him from the vehicle and escorted him to the zone car. Officer Smith walked back to the Cavalier, looked into the rear of the vehicle, and observed a silver handgun located on the floor behind the driver's seat. Officer Smith stated that the gun was not covered and that the barrel was pointing towards the front passenger seat, where D.S. was sitting. Additionally, Officer Smith reported that there was nothing obstructing the handgun from the view of the front-seat passenger and that the vehicle had split seats, allowing either occupant of the vehicle to reach for the gun.
 {¶ 4} Officer Smith stated that he yelled "gun" and another officer removed D.S. from the vehicle. Officer Smith removed the handgun, which was later identified as a loaded, 9 millimeter, star semi-automatic handgun. Officer Smith did not find any other weapons inside the vehicle. Both Samilton and D.S. denied ownership of the weapon and claimed that they did not know the weapon was inside the vehicle. *Page 3 
 {¶ 5} D.S. later testified that on February 22, 2006, he was walking home from school when he noticed a group of males chasing him. D.S. stated that he saw a lot of people fighting and began to run to avoid getting involved in the fight. As he was running, Samilton drove up in a blue Cavalier and told D.S. to get into the vehicle. D.S. explained that he knew Samilton because the two played basketball together at the local recreation center. D.S. stated that they were not close friends, but that he had been inside Samilton's vehicle on two or three prior occasions.
 {¶ 6} D.S. got into the vehicle and asked Samilton to drive him home. While they were on the way to D.S.'s house, Officer Smith pulled them over. D.S. testified that he was surprised to learn that there was a handgun inside the vehicle. D.S. claimed that he never knew the handgun was inside the vehicle.
 {¶ 7} The complaint, filed March 3, 2006, charged D.S. with delinquency by way of R.C. 2923.12, carrying a concealed weapon. During the court's June 20, 2006 trial, the court heard testimony from Officer Smith and D.S. At the conclusion of the evidence, the court found D.S. delinquent. After trial, D.S. filed a motion to reconsider the adjudication and the State responded. On July 18, 2006, the trial court overruled D.S.'s motion for reconsideration and sentenced him to serve probation and pay court costs. D.S. appeals, raising the two assignments of error contained in the appendix to this opinion. *Page 4 
 {¶ 8} In his first assignment of error, D.S. argues the State failed to present sufficient evidence to support his adjudication of delinquency. In his second assignment of error, D.S. argues that his adjudication of delinquency is against the manifest weight of the evidence. Although these arguments involve different standards of review, we will consider them together because we find the evidence in the record applies equally to both.
 {¶ 9} The standard of review with regard to the sufficiency of the evidence is set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, as follows:
 "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 10} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, in which the Ohio Supreme Court held:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the *Page 5 
evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)
 {¶ 11} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
 * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the *Page 6 
exceptional case in which the evidence weighs heavily against the conviction." Id. at 387. (Internal Citations Omitted.)
 {¶ 12} However, this court should be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact, and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the State has proven the offense beyond a reasonable doubt.State v. DeHass (1967), 10 Ohio St.2d 230, at paragraphs one and two of the syllabus. The goal of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." State v. Lindsey, 87 Ohio St.3d 479, 483,2000-Ohio-465. (Internal citation omitted.)
 {¶ 13} The essential elements of carrying a concealed weapon are that a person (1) knowingly, (2) carried or had concealed, (3) on his person or ready at hand, (4) a deadly weapon or dangerous ordnance. R.C.2923.12. In the present case, the State presented sufficient evidence to support each of the four elements enunciated above.
 {¶ 14} We shall address the "knowingly" element of the crime first. "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has *Page 7 
knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 15} D.S. analogizes the current matter with this court's decision in State v. Duganitz (1991), 76 Ohio App.3d 363. In Duganitz, the court found that the prosecution had not proved the defendant had knowledge of a concealed firearm found under an afghan in the car he was driving. The court reversed the trial court's conviction after it concluded that competing constructions of the evidence established a reasonable doubt as to whether the appellant knowingly carried or had the weapon. Id.
 {¶ 16} Duganitz is similar to the current case in some respects, i.e., the weapons in both cases were accessible to both the parties in the vehicle, the defendants in both cases denied any knowledge of the weapons and no fingerprints were discovered on any weapons in either case. However, unlike Duganitz, D.S. was not the registered owner of the vehicle, he was a passenger. Additionally, unlike Duganitz, Officer Smith never left the passengers alone in the vehicle without supervision. Finally, the weapon in the instant matter was not underneath an afghan, it was lying uncovered on the floor behind the driver's seat. The facts separating this case from the Duganitz case serve to clearly distinguish each case from the other. We therefore decline D.S.'s invitation to reverse pursuant to Duganitz. *Page 8 
 {¶ 17} Nevertheless, D.S. argues that the State offered only loose circumstantial evidence to demonstrate that he knew that the firearm was inside the vehicle. We do not think D.S.'s speculations justify setting aside the lower court's verdict. In proving that D.S. had knowledge of the firearm, the State made the following argument: a police broadcast informed Officer Smith that a group of males with weapons exited a Cavalier; Officer Smith observed the vehicle unoccupied on East 77th Street; Officer Smith later stopped this vehicle and observed Samilton and D.S. inside the vehicle; Officer Smith observed a handgun, uncovered, on the floor of the backseat and that nothing obstructed D.S.'s view of the handgun. Additionally, D.S. testified inconsistently about his relationship with Samilton and his activities from the time of his dismissal from school to the time of his arrest.
 {¶ 18} After reviewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable trier of fact could have concluded that D.S. had knowledge of the handgun.
 {¶ 19} We also find the State provided sufficient evidence to support the remaining three elements of the crime. Officer Smith testified that the gun was located inside of the vehicle in which D.S. was a passenger. Additionally, Officer Smith only observed the weapon after approaching from the passenger side of the vehicle. Thus, the State proved the second element of the offense. *Page 9 
 {¶ 20} The State also provided evidence of the third element of the offense. Because there was no evidence that D.S. actually possessed the firearm at the time of the arrest, the State was required to prove that D.S. exercised constructive possession over the firearm. State v.Burgess, Lake App. No. 2002-L-019, 2004-Ohio-3338. The State offered testimony that the firearm was "ready at hand" or within D.S.'s access. "It has been held that mere access to a weapon can establish guilt." Id.State v. Najeway, Summit App. No. 21264, 2003-Ohio-3154. Accordingly, the State met its burden of proof regarding this element of the offense.
 {¶ 21} Finally, the State and D.S. stipulated to the gun's operability at trial before any testimony was placed on the record.
 {¶ 22} Viewing this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found all the elements of carrying a concealed weapon proven beyond a reasonable doubt. Therefore, the State presented sufficient evidence to support D.S.'s adjudication of delinquency.
 {¶ 23} We further find that the trier of fact did not lose its way in convicting D.S. of carrying a concealed weapon. Though D.S. argues that the trial court should have believed his version of the events, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the State, that the State has proven the offense beyond a reasonable *Page 10 
doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 {¶ 24} We therefore overrule D.S.'s first and second assignments of error.
 {¶ 25} The judgment of the trial court is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 FRANK D. CELEBREZZE, JR., A.J., and MARY J. BOYLE, J., CONCUR *Page 1