Defendant-appellant Kenneth Jansen ("defendant") appeals the judgment of the trial court finding him guilty of carrying a concealed weapon. Defendant argues the evidence is constitutionally insufficient to sustain a conviction of carrying a concealed weapon.
Defendant was indicted for carrying a concealed weapon and possession of drugs. He pleaded not guilty to both charges and the case proceeded to a bench trial. Before trial commenced, both parties stipulated to the operability of the gun and to the presence of cocaine residue in a crack pipe found in the car.
At trial, the first witness to testify was an Officer Dvorak. Dvorak stated he was on routine patrol around 2:40 a.m. with his partner, Officer Prince, when he noticed a car directly across the Street with one headlight. He said the headlight was on with the help of the high beams, so he flashed his lights to notify the driver that his brights were on. The officer testified the other car did not move so he pulled across the street, right next to the car. He noticed a driver and two other passengers in the car: one male in the passenger seat and a female seated in the back. The officer explained that the driver appeared nervous so he asked him his name and the male passenger's name. The officer stated that both the driver and male blurted out different names at the same time. At this point, the officer testified he and Prince exited their car and approached the other car on both sides. Next, Dvorak said he questioned the occupants and received conflicting information, so Prince took the male passenger out and placed him at the rear of the car. Then Prince returned and positioned himself on the driver's side close to the front fender and windshield. Dvorak stated Prince did this so he could look in the front windshield and observe the driver while looking for weapons or contraband as the driver exited the car. Dvorak positioned himself behind the driver's side door towards the rear of the car. He then asked the driver to exit his car and almost immediately Dvorak stated he heard Prince yell "gun." Dvorak secured the driver and watched as Prince handcuffed the male passenger. A few moments later Dvorak handcuffed the driver who later turned out to be the defendant. Lastly. Dvorak stated Prince retrieved the handgun, a Glock semiautomatic nine millimeter, from the front seat. Upon further searching, they discovered a crack pipe on the driver's side floor.
The next witness to testify was the male passenger, Maurice Jamison. Jamison stated he did not know defendant and was only getting a ride from defendant because he knew the woman who was with defendant. He said he had seen defendant around this particular area in the past. Jamison said he did not notice the female passenger place the gun in the front seat. He testified he recognized both people as drug users and said the woman was also a prostitute. Jamison said he never noticed the gun. He stated he did not flee the scene once out of the car because he did not do anything wrong. Jamison admitted he testified in exchange for a plea agreement he made with the state.
Officer Prince was the third witness to testify. He stated he asked Jamison to exit the car and as Jamison exited the car he looked into the car, from the passenger's side, to make sure there were no weapons at hand. Prince stated he did not see any weapons in plain view upon initially looking into the car. Next, Prince said he escorted Jamison to the rear of the car and returned to the driver's side of the car between the driver's door and the front fender. Prince did this so he could watch for any weapons, while defendant exited the car. As soon as defendant shifted his weight to exit the car, Prince stated he saw the gun "tucked in the crack of the front seat" and yelled "gun." Prince said he then unholstered his revolver and retrieved the gun from the "split bench seat." Prince continued testifying that the female exited the car and upon a further search, a crack pipe was found in the area where defendant's feet were previously resting.
The final witness to testify was defendant. He admitted he had prior convictions for telephone harassment and escape from parole. Defendant stated he and the female had just come from a motel where he paid her for sexual favors. He said he picked up Jamison because the woman stated he was her nephew. Defendant testified he was nervous when the police car approached because he was driving with occupational driving privileges after the allowed time limit. He said he did not know Maurice Jamison and that is why he gave a false name to the officer. Defendant said he was not the owner of the gun and did not know how the gun came into the car. He also stated he told the officers on the scene it was not his and asked them to test the gun for fingerprints but they said they could not do a test because the gun handle was made of plastic.
At the conclusion of the trial, the trial court rendered its verdict. The trial court acquitted defendant of the drug possession charge explaining "I have a problem with the way the crack pipe was found. It could have fallen out of her pocket." However, the trial court determined defendant was guilty of carrying a concealed weapon. In support of this finding, the trial court stated "[t]he defense would like us to believe that the gun was brought in presumably by the — by Maurice, who was only in the car for 10 minutes. I find that hard to believe, coupled with the fact that this is an expensive gun."
Defendant timely filed his notice of appeal and now presents a single assignment of error which states as follows:
 THE EVIDENCE IS CONSTITUTIONALLY INSUFFICIENT TO SUSTAIN A CONVICTION OF CARRYING A CONCEALED WEAPON.
Defendant argues the state did not prove that he constructively possessed the weapon found between him and Jamison in the front passenger seat. Defendant claims the evidence was not sufficient to support the fact that he knew the weapon was in his vehicle. He claims it was very late and dark outside and he had just picked up a stranger who had a large sum of gambling money in his pocket. He maintains the officers did not observe any furtive movements by Jamison or him and it is unclear from the testimony how far the weapon was protruding from the seat. Moreover, defendant argues Officer Prince admitted he never saw defendant with the gun and stated he did not know who actually had the weapon. As a result, defendant claims the evidence was insufficient to support the trial court's finding that he had either actual or constructive possession of the weapon citing toState v. Duganitz(1991), 76 Ohio App.3d 363.
The state counter-argues the evidence supported a finding that defendant constructively possessed the gun. i.e. exercised dominion or control over the weapon. The state contends the following evidence supports the guilty verdict: defendant was the driver and owner of the vehicle, the gun was found sticking out from the seat when defendant exited the car, the gun was concealed while defendant was in the car, and the gun was within his reach and loaded with 14 rounds. The state argues the most damaging evidence is that when Jamison exited the car the weapon was not visible, it was only after defendant exited the vehicle that the weapon was visible. Regarding Duganitz, the state maintains it is distinguishable from the present case because in Duganitz the gun was concealed under a blanket, it was easily accessible to both Duganitz and the passenger, and the passenger was in the vehicle alone and could have slid the gun under the blanket if it was his.
The test for reviewing a claim of insufficient evidence is found at paragraph two of the syllabus of State v. Jenks (1991),61 Ohio St.3d 259, which states:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
To sustain a conviction for carrying a concealed weapon, the state had to prove beyond a reasonable doubt that the defendant knowingly carried or had a weapon concealed on his person or concealed ready at hand. R.C. 2923.12. Constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. Cincinnati v. McCarthy(1971). 30 Ohio App.2d 45. Constructive possession requires some evidence that the person exercised dominion or control over the object. State v. Pruitt
(1984), 18 Ohio App.3d 50, 58.
Defendant argues the state did not prove that he constructively possessed the gun. In support he submits State v. Duganitz,supra. In Duganitz, Duganitz and a passenger were stopped while driving in a high crime area. The arresting officer first removed Duganitz, who was driving, from the car then the passenger. Upon initiating a search of the car, the officer saw an Afghan blanket which covered "the right side of the seat and went almost all the way to the driver's side." The officer discovered a loaded .38 caliber revolver under the blanket and to the right of where Duganitz was sitting. Duganitz denied ownership of the gun but was later convicted of carrying a concealed weapon. On appeal, this court reversed the conviction holding "the record does not contain any direct evidence of Duganitz's ownership, possession, or control of the weapon."
However, Duganitz is distinguishable from the instant case in two important aspects. First, a close reading of Duganitz reveals the majority did not state with any specificity the exact location of the weapon. The opinion stated the gun was located "to the right of where appellant had been sitting," "the gun was found between both men," and "[t]he gun was found in a location between the passenger and driver though somewhat closer to the driver." In comparison, in the present case Officer Prince stated he did not see the gun when he initially looked into the car from the passenger's side of the car while removing Jamison. He only saw the weapon when defendant shifted his weight to exit the car and it was "stuck in the crack in the front seat" of a "split bench seat." Thus, in the present case the exact location of the gun was known, it was directly below defendant's buttocks to the right. It was in very close proximity to defendant.
Second, in Duganitz the majority stated the gun "was just as ready at hand to the passenger as the appellant." However, in the present case the gun was not equally accessible to the passenger as defendant. There is no evidence in the record that Jamison knew of the gun's presence, had access to it, or owned the gun. The gun was stuck in the crack in the seat which was a bench style seat, sticking out only an inch to an inch and one-half. The gun was concealed by defendant until he shifted his weight to exit the car and only then did Officer Prince see it. Defendant concealed the gun and had complete control over it.
An aggregate review of the evidence, shows defendant exercised dominion and control over the weapon and concealed the weapon. Prince initially looked into the car and did not see any weapons or contraband in plain view as he removed Jamison from the car. Prince then positioned himself above the driver's side door, near the front windshield to look into the car for weapons and contraband and watch defendant as he exited the car. Dvorak ordered defendant to exit the car. As defendant shifted his weight to get out of the car, Prince immediately yelled "gun." Prince saw the gun concealed by defendant and directly below him to the right, stuck in the crack between the two sections of the bench seat. Prince said the gun was sticking out an inch to an inch and onehalf.
The officers testified they saw no furtive movements and watched closely as each person exited the car, therefore it is unlikely Jamison or the female passenger slipped the gun towards defendant. Moreover, there is no evidence that Jamison possessed the gun or pushed it towards defendant. In fact defendant did not even testify Jamison possessed the gun. The gun was found directly beneath defendant within close proximity and was concealed by defendant until he exited the car. It was completely within his dominion and control and there is no evidence to contravene these facts. We find there was ample evidence to find defendant constructively possessed the gun.
After viewing the evidence in a light most favorable to the prosecution, we find any rational trier of fact could have found the essential elements of carrying a concealed weapon proven beyond a reasonable doubt. Accordingly, defendant's sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY F. McMONAGLE, P.J., JAMES D. SWEENEY, J.,CONCUR.
 ___________________________________ JUDGE JOHN T. PATTON
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26 (A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also S.Ct.Prac.R. II, Section 2(A)(1).