JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Richard Brelo, appeals from the trial court's judgment, rendered after a jury trial, finding him guilty of theft, with an elderly specification, and two counts of domestic violence. Appellant contends that the evidence was insufficient to sustain his convictions and that his convictions were against the manifest weight of the evidence. For the reasons that follow, we affirm.
 {¶ 2} In July 2005, a Cuyahoga County Grand Jury indicted appellant on one count of theft, in violation of R.C. 2913.02, with an elderly specification charging that the victim was 65 years of age or older; two counts of domestic violence, in violation of R.C. 2919.25; and one count of carrying a concealed weapon, in violation of R.C. 2923.12.
 {¶ 3} At trial, Lorretta Brelo, appellant's mother, testified that she was 71 years of age and had been married to Richard Brelo, appellant's father, for 52 years. Mrs. Brelo testified that her husband had suffered a stroke three years prior and had been living in a nursing home since the stroke. She and Richard had two adult children, Paul and Richard Brelo.
 {¶ 4} Mrs. Brelo testified that in May 2005, appellant, who had not spoken with his mother for nearly a year and a-half, telephoned her and told her that he would be passing through town and wanted to see her and her husband. Mrs. Brelo testified that in light of numerous problems with appellant,[1] she and her husband were estranged from him and she was uncomfortable with his returning to Ohio, but she nevertheless agreed to see him. When appellant arrived at the end of May, Mrs. Brelo told him that he could not drink or use drugs while he was staying with her. Mrs. Brelo owned a 1995 Buick that was in working condition when appellant arrived. When she saw appellant opening the hood of the car and washing out the motor, she instructed him not to do any work on her car. Despite Mrs. Brelo's instructions, appellant continued to work on the car and, within several days, it was no longer operable.
 {¶ 5} Early in June, Mrs. Brelo was admitted to the hospital for approximately eight days. She testified that when she spoke with appellant during her hospital stay, he told her that he was working on the car and needed money for parts.
 {¶ 6} Mrs. Brelo testified that she returned home from the hospital to "a week of hell." According to her, appellant immediately informed her that she owed him $3,000 for the work he had done on the car, even though it still was not working. When she told appellant that she did not have any money for the car, he threatened to put a mechanic's lien on the car and then told her to sign the car over to him.
 {¶ 7} In mid-June, Mrs. Brelo was readmitted to the hospital for a week. Upon her return home, she observed that items in her apartment had been rearranged, pictures had been taken off the walls and various papers had been moved. She also discovered that her husband's clothes — which included numerous dress shirts, suits, sports coats, and shoes worth approximately $2,000 — were no longer in the closet in the second bedroom. When she questioned appellant about the clothes, he told her that Mr. Brelo did not need them, so he had placed them in the storage cabinet on the porch. Mrs. Brelo subsequently learned that the clothes were not in the storage cabinet and had been disposed of. According to Mrs. Brelo, when she told appellant that he had no right to dispose of the clothes, he only got "meaner and nastier" toward her, swearing at her and calling her names.
 {¶ 8} The arguments between Mrs. Brelo and appellant became more frequent and intense. Mrs. Brelo testified that appellant would "rant and rave" that she owed him money and that she should have given him the car she owned prior to the Buick. During one of the arguments, Mrs. Brelo became so frustrated that she slapped appellant, and he then slapped her.
 {¶ 9} Mrs. Brelo testified that during another argument, as she was sitting at a table, appellant grabbed her arm and held it down. He then grabbed her hair and pulled her head back. Then, waving a knife in her face, he told her, "[y]ou can call the police, but I'll get you, and I'll slit your throat and I'll slit the throats of the family, the grandchildren."
 {¶ 10} On another occasion when appellant and Mrs. Brelo were arguing, appellant ordered her to go to her room. She testified that she apparently did not move fast enough, because appellant pushed her into her room, causing her to fall. Appellant then grabbed her arm and pulled her up so hard that it left bruises on her arms.
 {¶ 11} Aware that she needed help, Mrs. Brelo waited until appellant left the apartment and then called her son Paul and told him what had happened. Minutes later, the police arrived at the apartment.
 {¶ 12} Westlake police officer Paul Hartranft testified that he and Officer Jeffrey Hernandez responded to Mrs. Brelo's apartment after receiving a telephone call from Paul Brelo requesting that the police check on his mother. Officer Hartranft testified that he observed tears in Mrs. Brelo's eyes and could tell that she was "shaken up." He observed that Mrs. Brelo had bruises on her arms which he estimated to be one or two days old and which, based on his training and experience, appeared to have been caused by someone holding onto her arms. Officer Hernandez testified similarly that he observed dark, fresh bruises on Mrs. Brelo's arms.
 {¶ 13} Westlake police officer John Jereb testified that he subsequently arrested appellant as he got off a bus in front of Mrs. Brelo's apartment. Upon searching appellant, Officer Jereb found a serrated knife and pepper spray in his pockets.
 {¶ 14} Mrs. Brelo testified that only she and appellant had access to her apartment. After appellant was arrested, she noticed that many items were missing from her apartment. She then inventoried her apartment and made an extensive list of the items that had disappeared since appellant had arrived to stay with her, including her husband's clothes and her jewelry, flatware, china, and linens. Mrs. Brelo estimated that the total value of the missing items was approximately $15,000.
 {¶ 15} When she inspected her car after appellant's arrest, Mrs. Brelo discovered that in addition to not running, there was a large hole in the hood, the front grill was broken, and the trunk would no longer close. Mrs. Brelo testified that it cost over $2,500 to get the car repaired.
 {¶ 16} Donald Stephenson, a neighbor of the Brelos and a retired Lorain County Sheriff's deputy, testified that in June 2005, he saw appellant working on Mrs. Brelo's car. At appellant's request, Mr. Stephenson twice drove him to an auto parts store.
 {¶ 17} Mr. Stephenson testified further that on another occasion, appellant came to his apartment and asked if he wanted to buy Mrs. Brelo's computer. When Mr. Stephenson told appellant that he was not interested, appellant told him that he had other items to sell that Mr. Stephenson might like. Mr. Stephenson testified that he "cut him short," because, given his background in law enforcement, he was suspicious as to why appellant was selling Mrs. Brelo's things while she was in the hospital.
 {¶ 18} Appellant testified in his own defense. He denied exerting control over his mother's things without her consent. He testified that he has a background in auto mechanics and that his mother told him to fix her car. He testified further that Mrs. Brelo told him to donate his father's clothes to Goodwill and that he had her permission to sell the computer. He asserted that he cleaned Mrs. Brelo's apartment during her hospital stay because he believed she was getting sick due to an allergic reaction to something in the apartment and he merely moved items around in the apartment in order to properly clean it. He testified that he put certain items in storage after determining that his mother did not need or use those items. He denied knowing anything about his mother's missing jewelry.
 {¶ 19} Appellant testified further that his mother is unreasonable and prone to temper tantrums, and that, as early as 2003, he had "very grave concerns" about her mental health. He denied ever assaulting her or pulling a knife on her. He testified that Mrs. Brelo became hysterical when she learned that he had been calling friends and relatives to express his concerns about his mother's mental health, jumped out of her chair, "came running at [him]" and "smacked" him in the face. According to appellant, he grabbed her by the arms and forced her to sit in a chair, while she continued to scream at him. Appellant testified that a week later, as she was sitting on her bed, Mrs. Brelo again became upset with him, jumped off the bed, and attacked him. Appellant asserted that his mother bruises easily and that, while he may have caused some of the bruises, he was not trying to hurt or assault her when he touched her. Finally, appellant testified that he carried pepper spray to protect against wild animals and that he used the knife as a tool.
 {¶ 20} The court denied appellant's Crim.R. 29 motion for acquittal and the jury subsequently found him guilty of theft and two counts of domestic violence but not guilty of carrying a concealed weapon. The trial court sentenced him to 17 months incarceration.
 {¶ 21} In his first assignment of error, appellant contends that the trial court erred in denying his Crim.R. 29 motion for acquittal because the evidence was insufficient to sustain his convictions.
 {¶ 22} Crim.R. 29(A) provides for a judgment of acquittal "if the evidence is insufficient to sustain a conviction of such offense or offenses." An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 23} Appellant was convicted of theft, with an elderly specification, and domestic violence. R.C. 2913.02(A)(1), regarding theft, provides that, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * without the consent of the owner or person authorized to give consent." R.C. 2913.01 provides that an "elderly person" is a person who is 65 years of age or older.
 {¶ 24} With respect to his theft conviction, appellant argues that the evidence was insufficient because there was no evidence that he stole the missing items from Mrs. Brelo. We disagree.
 {¶ 25} Mrs. Brelo testified that only she and appellant had access to her apartment. She testified further that appellant did not have permission to work on her car or to sell, destroy, throw away, or move any of her property and she identified the large number of items that disappeared from her apartment soon after appellant had access to her house. Corroborating her testimony that appellant took the missing items, Mr. Stephenson testified that while Mrs. Brelo was in the hospital, appellant offered to sell her computer to him and then told him that he had other items to sell if he was interested.
 {¶ 26} Appellant argues that Mrs. Brelo's testimony that he took the missing items is suspect because significant items like TV's, VCR's and an expensive ring were not missing from the apartment. Appellant seems to suggest that because some items were not taken, he did not take other items. This argument is without merit. Simply because he did not steal some items in the apartment does not mean that he did not steal other items.
 {¶ 27} Construing the evidence in a light most favorable to the prosecution, the State's evidence, if believed, is sufficient to convince a reasonable juror, beyond a reasonable doubt, that appellant obtained control over various items that belonged to Mrs. Brelo, without her consent or authorization. Additionally, Mrs. Brelo's testimony that she was 71 years of age was sufficient to support the elderly specification.
 {¶ 28} With respect to appellant's convictions for domestic violence, R.C. 2919.25 provides that, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."
 {¶ 29} Mrs. Brelo testified regarding two incidents in which appellant assaulted her. During one incident, appellant held her arm down, pulled her head back, and threatened to slit her throat and then slit the throats of her grandchildren. In the other incident, appellant pushed her so hard that she fell, and then grabbed her arm and pulled her up so hard that it left bruises on her arm. Westlake police officers Hartranft and Hernandez both testified that they observed fresh bruises on Mrs. Brelo's arms which appeared to have been caused by someone holding her with force.
 {¶ 30} Appellant argues that Mrs. Brelo's testimony regarding these incidents is suspect, however, because she admitted that prior to these incidents, appellant had never raised his hand to her. This argument is without merit. Even though appellant may have never hit his mother before these incidents, Mrs. Brelo's testimony, if believed, is sufficient to demonstrate that appellant knowingly caused physical harm to his mother.
 {¶ 31} Appellant's first assignment of error is overruled.
 {¶ 32} In his second assignment of error, appellant contends that his convictions were against the manifest weight of the evidence.
 {¶ 33} While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion. State v.Thompkins (1997), 78 Ohio St.3d 380, 390. When considering appellant's claim that the conviction is against the weight of the evidence, a reviewing court sits essentially as a "`thirteenth juror' and [may] disagree with the fact finder's resolution of the conflicting testimony." Thompkins, supra at 387, quoting Tibbs v. Florida (1982), 457 U.S. 31, 42,102 S.Ct. 2211, 72 L.Ed.2d 652. The reviewing court must examine the entire record, weighing the evidence and considering the credibility of witnesses, while being mindful that credibility generally is an issue of fact for the trier of fact to resolve.State v. Thomas (1982), 70 Ohio St.2d 79, 80. The court may reverse the judgment of conviction if it appears that the jury, in resolving conflicts in the evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 34} Appellant argues that his convictions were against the manifest weight of the evidence because there is no evidence to support Mrs. Brelo's testimony that he took the missing items. We disagree.
 {¶ 35} It is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, because "circumstantial evidence and direct evidence inherently possess the same probative value[.]" Jenks,61 Ohio St.3d 259 at paragraph one of the syllabus. "`Circumstantial evidence' is the proof of certain facts and circumstances in a given case, from which the jury may infer other connected facts which usually and reasonably flow according to the common experience of mankind." State v. Duganitz (1991),76 Ohio App.3d 363, quoting Black's Law Dictionary (5 Ed. 1979) 221. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Jenks,61 Ohio St.3d at 272.
 {¶ 36} Here, Mrs. Brelo's testimony that the items disappeared from her apartment only after appellant began living with her is circumstantial evidence that he took them. Likewise, Mr. Stephenson's testimony that appellant offered to sell him Mrs. Brelo's computer and other items while she was in the hospital is circumstantial evidence that corroborates Mrs. Brelo's testimony that appellant took the missing items. Furthermore, on cross-examination, appellant agreed that only he and his mother had access to the apartment. In light of this evidence, the jury did not lose its way in finding appellant guilty of theft.
 {¶ 37} Appellant also contends that there was no evidence that he knowingly caused physical harm to his mother. Again we disagree. Mrs. Brelo testified regarding two incidents in which appellant assaulted her. Although appellant contends that her testimony was not credible, the credibility of the testimony and the weight of the evidence are primarily matters for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230. Accordingly, it was within the jury's discretion to determine whether to believe Mrs. Brelo or appellant.
 {¶ 38} After reviewing the entire record, weighing the evidence, and considering the credibility of the witnesses, we are not persuaded that the jury lost its way and created such a miscarriage of justice that appellant's convictions must be reversed.
 {¶ 39} Appellant's second assignment of error is overruled.
Affirmed.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Ann Dyke, A.J., and Colleen Conway Cooney, J., concur.
[1] Appellant testified that he has smoked marijuana since 1973. He testified further that he was arrested in 1988 for possession of marijuana and an unloaded firearm and incarcerated for ten years. Since then he has been a drifter, with no permanent address or employment.