[Cite as *State v. Gill*, 2013-Ohio-5027.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99529**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## FLOY GILL

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART
AND REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-565332

**BEFORE:** Jones, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 14, 2013

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:     Brad S. Meyer
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Defendant-appellant, Floy Gill, appeals his felonious assault convictions with firearm specifications that were rendered after a jury trial. He also appeals his having weapons while under disability conviction that was rendered by the court. We affirm the judgment of conviction; reverse the judgment of sentence; and remand for resentencing.

## I.   Procedural History

{¶2} In August 2012, Gill was charged in a three-count indictment for the September 8, 2010 shooting of Rebeka Hurt. Counts 1 and 2 charged Gill with alternative means of committing felonious assault against Hurt, and Count 3 charged Gill with having weapons while under disability. The felonious assault charges contained one- and three-year firearm specifications.

{¶3} The matter proceeded to trial, with the felonious assault and firearm specification charges before a jury and the having weapons while under disability charge before the bench. At the conclusion of trial, the jury found Gill guilty of the felonious assault charges and firearm specifications, and the court found him guilty of having weapons while under disability.

{¶4} For the purpose of sentencing, the felonious assault charged in Count 2 merged with the felonious assault charged in Count 1. The trial court sentenced Gill to a three-year prison term on Count 1, to be served consecutively to a three- year term for the firearm specification. The trial court further sentenced him to a one-year prison term on Count 3, having weapons while under disability, and ordered that it be served

consecutively to Count 1. Thus, the trial court sentenced Gill to a total seven-year prison term.

## II. Facts

{¶5} The victim, Rebeka Hurt, had known Gill for about seven or eight years at the time of the incident; she had previously dated Gill's brother, and she and the brother maintained a good relationship. Hurt was also friends with Gill and would frequently see him. Additionally, Hurt was good friends with Gill's girlfriend, Sharonika Allen.

{¶6} Hurt testified that on the day of the incident, she and Allen were "hanging out" at Hurt's grandmother's house. Hurt called a friend, Gregory Clark,[1] to see what he was doing; he and his roommate, Lewis Menefee, were watching a basketball game. Hurt and Allen decided to join them.

{¶7} At Clark's house, the four "hung out," and by all accounts were drinking and smoking marijuana. According to Hurt, Gill continuously called Allen's cell phone while they were at Clark's house. Thus, after approximately three hours of "hanging out" at Clark's house, Clark drove Allen to East 139th Street and Beachwood Avenue, where Allen was to meet up with Gill; Hurt went along for the ride. Hurt was the front seat passenger and Allen was in the back seat. Hurt testified that Gill continued to call and text Allen during the drive to take Allen to meet up with Gill.

{¶8} According to Hurt, when they arrived at the destination, she saw Gill standing in the middle of the street. Clark drove slowly past Gill and stopped, whereupon Allen

---

[1]Clark is also at times referred to as Gregory Demp in the transcript.

got out of the car and walked around to the back of the car where Gill was standing. Hurt testified that she "almost immediately" heard shots being fired from behind the car and ducked. Clark drove off, and Hurt looked back and saw that Gill's arms were extended out in front of him. Hurt realized that she had been shot and called 911. A recording of the 911 call was played at trial; Hurt identified Gill as the shooter.

{¶9} Clark drove Hurt to the hospital. Hurt suffered a gunshot wound to her abdomen and had to undergo three surgeries.

{¶10} Hurt testified that no one else was outside except Gill when they arrived at East 139th Street and Beachwood Avenue. Hurt further testified that when Clark drove past Gill, she thought there might be "problems" because Gill and Allen had "bickered" in the past and sometimes their disagreements "got physical." Hurt denied that she was too impaired to know what was going on.

{¶11} Officer Robert Kowza responded to the hospital, where Hurt told him that Gill had shot her. Kowza went to the crime scene where he found bullet casings and secured the area. The officer also recovered a fragment of the bullet taken from Hurt's abdomen.

{¶12} Kowza further testified that Hurt told him that Gill had exited from a house and shot into the crowd. Hurt testified that she did not tell that to Officer Kowza, or did not remember telling that to him.

{¶13} Clark, who had driven Allen to East 139th Street and Beachwood Avenue, testified that he had no knowledge of to whose home he was taking her. Further, at the

time of the incident, he did not know Gill. Clark testified that after Allen got out of the vehicle, he heard a "pop," looked in his rearview mirror, and saw a person, whom he could not identify as male or female, standing behind the car shooting at it.

{¶14} Detective Michael Gibbs responded to the scene the evening of the incident, approximately three hours after the shooting. He found eight 9 mm shell casings from four different manufacturers and two fragmented bullets. The detective did not find any fingerprints on the bullet casings, and he testified that the heat from the firing of the gun would have destroyed any DNA material. Gibbs could not tell if the bullets had been fired from the same gun or at the same time.

{¶15} Detective Kevin Callahan was the investigating detective. He spoke with Hurt five days after the shooting, at which time Hurt told him that Gill had shot her. Hurt identified Gill from a photo. The detective was unable to make contact with Allen.

{¶16} Allen testified for the defense. She testified that she had known Gill for approximately six years and that they have a child together. According to Allen, she was dropped off at East 139th Street and Beachwood Avenue so that she could go to her friend's house. When they arrived at the destination, she got out of the car and headed to her friend's house, when someone came out of the house and started shooting at the car. Allen testified that she could not see the man's face when he was firing the shots because it was covered. But during the incident, she dropped to the ground, the shooter ran over to her, looked at her, and ran off. Although she still could not see the shooter's face, she knew from his body build that it was not Gill. Allen denied that she and Gill

were dating at the time of the shooting, and she denied that she was being dropped off to see Gill that evening.

{¶17} On this testimony, Gill was convicted of felonious assault and having weapons while under disability. He now assigns two errors for our review: the first challenging the weight of the evidence, and the second challenging the imposition of consecutive sentences.

III. Law and Analysis

**Manifest Weight of the Evidence**

{¶18} A manifest weight challenge questions whether the state met its burden of persuasion at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. This court

> weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} As to the review of witness credibility, this court has stated the following:

> Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in

weighing the credibility of the proffered testimony."

(Citations omitted.)   *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio- 2999, ¶ 26, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24.

**{¶20}** Gill contends that the conviction was against the manifest weight of the evidence because it was not proven beyond a reasonable doubt that he was the shooter. We disagree.

**{¶21}** It is true that none of the witnesses testified that they actually saw a gun in Gill's hand.   But circumstantial evidence alone may be used to support a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991).   Circumstantial evidence is the "proof of certain facts from which the trier of fact may infer other connected facts that usually and reasonably follow, according to the common experience of mankind."   *State v. Duganitz*, 76 Ohio App.3d 363, 367, 601 N.E.2d 642 (8th Dist.1991) citing *Black's Law Dictionary* 221 (5th Ed.1979).   "[T]he circumstances, to have the effect of establishing an allegation of fact, must be such as to make the fact alleged appear more probable than any other; the fact in issue must be the most natural inference from the facts proved."   *Duganitz* at *id.* citing 44 Ohio Jurisprudence 3d, Section 1023 (1983).

**{¶22}** Hurt testified that during the hours prior to Allen meeting up with Gill, Gill had been texting and calling Allen.   When they arrived at the destination where Allen was to meet Gill, Hurt saw Gill standing in the middle of the street.   Aware that Allen and Gill were known to bicker, had had physical confrontations in the past, and concerned

about potential tension between them that day, Hurt paid close attention to the two of them when Allen got out of the car.   She was certain that the man standing in the street was Gill.   Further, Hurt testified that no one else was outside at the time.

{¶23} According to Hurt, shots were fired "almost immediately" upon Allen exiting the car.   Hurt looked backed and saw that Gill's arms were extended out in front of him.   After realizing that she had been shot and calling 911, Hurt, without hesitation, identified Gill as the shooter.   Hurt maintained throughout the investigation of the case that Gill was the shooter.

{¶24} Likewise, although Clark did not know Gill and, thus, could not identify him, he did testify that when Allen exited the car, he heard a "pop," looked in the rearview mirror, and saw that the person standing behind the car was shooting at them. That person, according to Hurt's testimony as just detailed, was Gill.

{¶25} The direct and circumstantial evidence in this case proved beyond a reasonable doubt that Gill was the shooter.   The inconsistencies in the testimony do not cast doubt on the conviction.   For example, Officer Kowza's testimony that Hurt told him that Gill came out of house and fired shots into the crowd still implicated Gill as the shooter.

{¶26} And the testimony as to exactly how the group came to be at the crime scene (that is, whether Clark picked Hurt and Allen up from Hurt's grandmother's house to go to Clark's house, or if the two got there some other way), does not change that, at some point later that evening, Clark drove Hurt and Allen to East 139th Street and Beachwood

Avenue, where Gill shot at the car the trio was in, and struck Hurt.

**{¶27}** As to Allen's testimony for the defense, the jury did not find it credible. We do not find that result untenable and defer to its determination.

**{¶28}** In light of the above, Gill's felonious assault and having weapons while under disability convictions were not against the manifest weight of the evidence. The first assignment of error is, therefore, overruled.

**Consecutive Sentences**

**{¶29}** R.C. 2953.08(G)(2), governing appellate review of felony sentencing, provides as follows:

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:
>
> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;
>
> (b) That the sentence is otherwise contrary to law.

**{¶30}** Thus, under R.C. 2953.08(G)(2), the following two grounds permit an appellate court to reverse a trial court's imposition of consecutive sentences upon an offender: (1) the sentence is "otherwise contrary to law"; or (2) the appellate court, upon its review, clearly and convincingly finds that "the record does not support the sentencing court's findings." *See also State v. Venes*, 8th Dist. Cuyahoga No. 98682,

2013-Ohio-1891, ¶ 11.

**{¶31}** Under R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find that the sentence is "necessary to protect the public from future crime or to punish the offender." The trial court must also find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Further, the trial court must find that one of the following factors applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction * * *, or was under postrelease control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term * * * adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

*Id.*

**{¶32}** At sentencing, the trial court stated that it was its "job to protect the public and then to hand down a sentence which is fair." The court noted that it did not

> believe that the bullet was intended for Ms. Hurt, but in this unfortunate circumstance, it did hit her and she went through a very traumatic situation which still arises today where she's still having issues with her physical ailments as well as her mental ailments.

**{¶33}** The court further noted that Gill had a criminal history "not only dating back to juvenile, but back to 2001. The majority of it * * * is drugs and cocaine and selling

drugs and buying drugs * * *."

**{¶34}** The court found that a prison sentence was consistent with the purposes and principles of sentencing, and in imposing the consecutive sentence, stated the following:

> On Count 3, having weapons while under disability, I find that to be a situation where because of your prior criminal history and the fact that there's a gun involved in this case and being advised in the past and even serving terms of incarceration that you are someone who has a disability for carrying a gun, I'm going to sentence you on that felony of the third degree to 1 year of incarceration * * * and I believe a fair sentence would be a consecutive sentence to the underlying charge that I handed down on Count 1 of the indictment for a total term of 7 years * * *.

**{¶35}** On this record, we do not find that the trial court satisfactorily made the required findings for the imposition of consecutive sentences. Although the court offered "reasons" for the sentence, they were not specifically tied to the required findings for consecutive sentences. *See State v. Schmick*, 8th Dist. Cuyahoga No. 99262, 2013-Ohio-4488. In *Schmick*, this court recently held that "substantial compliance" with the statutory requirements for the imposition of consecutive sentences is not sufficient.

> Otherwise, general statements made by trial courts can too easily be read as consecutive sentence findings. We do not believe that the legislature intended such a result; rather, it has specifically delineated the findings that need to be made when sentencing to consecutive terms.

*Id.* at ¶ 13.

**{¶36}** In light of the above, the second assignment of error is sustained.

**{¶37}** Judgment of conviction affirmed; judgment of sentence reversed; case remanded for resentencing.

It is ordered that appellant and appellee split the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.  The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR