JOURNAL ENTRY and OPINION
{¶ 1} Appellant Christopher Worley appeals his conviction and sentence after a jury trial. On appeal, he assigns the following errors for our review:
"I. The State failed to present sufficient evidence to sustain appellant's conviction."
"II. The trial court erred when it denied the appellant's motion for severance from his co-defendant Marvin Bryant."
"III. The appellant's convictions are against the manifest weight of the evidence."
"IV. The trial court erred by imposing a sentence of more than the minimum in violation of the Fifth Amendment Due Process Clause of the United States Constitution and Article I Section 16 of the Ohio Constitution."
 {¶ 2} Having reviewed the record and pertinent law, we reverse and vacate Worley's conviction. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Worley for one count of aggravated robbery, with one and three-year firearm specifications, and one count of attempted murder. Worley's co-defendant, Marvin Bryant, was indicted on two additional counts of felonious assault, with one and three-year firearm specifications, and on one count of having a weapon while under a disability. Worley pled not guilty at his arraignment and asked the court to sever his trial from Bryant's trial. The trial court denied his motion.
 {¶ 4} At the joint jury trial that ensued, the victim, Frederick Ward, testified that he is a general contractor doing home remodeling, new construction, and repairs on fire-damaged houses for insurance companies. He stated that in December 2003, he was simultaneously repairing two fire-damaged houses, respectively located on the east and west side of Cleveland.
 {¶ 5} On or about December 5, 2003, he was rebuilding the garage of the house located on the east side, when Worley approached and asked if he needed help. Ward agreed to hire Worley to work for the day, because one of his employees was late for work. At the end of the day, Worley asked Ward to hire him and his friend, Marvin Bryant, to construct the garage roof. Ward stated he was hesitant because he had never seen Bryant's work, but Worley persisted, so he agreed to meet with Bryant.
 {¶ 6} After they met, Ward agreed to subcontract the construction of the garage roof to Bryant for $650. Bryant constructed the garage roof with the help of Worley. However, after the roof was completed, Ward delayed payment to Bryant and Worley because the insurance company had not released a check to him. Ward stated he informed both Bryant and Worley about the situation and assured them they would be paid the following Friday. Upon hearing this, Bryant became upset and accused him of "playing games".[1]
 {¶ 7} On January 21, 2004, Ward brought a subcontractor to install carpet in the house on the east side of Cleveland. Ward testified as follows about the ensuing events:
"Q. What did you do after you took the supplies into the house?
A. We were leaving out and as we were leaving out, that is when I ran into Mr. Worley. He was coming out of his driveway.
Q. Where was Marcus Jackson when you saw Christopher Worley?
A. He was with me.
Q. What happened next?
A. I went over to talk to — I was parked on the south side of the street on Iroquois in front of the house, almost on the side of the house, and Mr. Worley came up, came down Iroquois, and he parked parallel to where I was. I went over to talk to him to tell him that we were receiving the check. I was in the — we were going to receive the check either that Thursday or definitely by Friday, that I would have his money so he could meet me over there at 12:00 and I can pay him his money."[2]
"* * *
"Q. And what was Mr. Worley doing when you went to talk to him?
A. He was on the cell phone.
Q. And were you able to talk with Mr. Worley?
A. Yes. I was explaining to him that if he met me here on Iroquois at 12:00 tomorrow, then I would have his money for him."[3]
"* * *
"Q. And Christopher Worley was on the phone. Do you know who he was on the phone with?
A. He was on the phone with Mr. Bryant.
Q. And did you end up talking to Mr. Bryant?
A. Yes, he handed me the phone and I spoke to Mr. Bryant.
Q. Just to be clear, so Christopher Worley handed you his phone?
A. Yes.
Q. And you talked to Mr. Bryant?
A. Yes.
Q. What was the nature of the conversation with Marvin Bryant?
A. And I explained to him that I was telling him the same thing that I was telling Mr. Worley, that if he met me over here tomorrow, I will have his money for him right around 12:00. Then I would have his money.
Q. And how did Marvin Bryant react to that?
A. Basically he was saying he's tired of playing F-ing games and so I handed the phone back to Mr. Worley and he came around the corner from this way."[4]
 {¶ 8} Ward further testified that within moments after handing the cell phone back to Worley, a car came around the corner and suddenly stopped in front of them. Bryant, a passenger in the car, exited with a gun in his right hand, approached Ward, and angrily told him that he wanted his money. Bryant aimed the gun at Ward and clicked it twice, but it jammed. Ward attempted to back away, but Bryant followed, slapped him in the face, while pointing the gun at his head. Bryant shot Ward in the leg, emptied his pockets, stole approximately $30, got back in the car, and fled alone.
 {¶ 9} Ward also testified that, during the incident, Worley never exited his vehicle.
 {¶ 10} The jury found Worley guilty of aggravated robbery and not guilty of the other counts. The trial court sentenced him to a four-year term of incarceration. Worley now appeals.
 SUFFICIENCY OF THE EVIDENCE {¶ 11} In the first assigned error, Worley argues the evidence was insufficient to support his conviction; he contends that his "mere presence" at the scene of the offense does not establish that he aided or abetted Bryant in the commission of the offense. We agree.
 {¶ 12} A challenge to the sufficiency of evidence supporting a conviction requires the appellate court to determine whether the State met its burden of production at trial.[5] On review for legal sufficiency, the appellate court's function is to examine evidence admitted at trial and determine whether such evidence, if believed, would convince the average person of the defendant's guilt beyond a reasonable doubt.[6] In making its determination, an appellate court must view the evidence in a light most favorable to the prosecution.[7]
 {¶ 13} In the instant case, the jury found Worley guilty of aggravated robbery in violation of R.C. 2911.01, which provides, in pertinent part, that no person:
"* * * in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following: (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."
 {¶ 14} We find that the facts in the record when viewed in the light most favorable to the prosecution, do not support a finding beyond a reasonable doubt of the essential elements of aggravated robbery as charged. The trial testimony demonstrates that as Ward was leaving the house, he saw Worley, who lived across the street, backing out of his driveway. Ward testified that he approached Worley to tell him that he would pay him the following day. These facts indicate that this was nothing more than a chance encounter between the two men.
 {¶ 15} Further, Ward testified as follows regarding the tone of their conversation:
"Q. You were just giving him assurances that, hey, don't worry, don't worry, Chris, that I'm going to pay you?
A. Yes.
Q. He didn't say, "I am sick of these F-ing games," did he?
A. No.
Q. Did he ever show you any disrespect ever?
A. No."[8]
 {¶ 16} The above testimony is devoid of any indication that Worley threatened, menaced or acted hostile towards Ward. Nevertheless, at trial, Detective Laura Terrace testified that Ward told her Worley threatened him and that Worley had a gun. However, on cross-examination, Ward testified that he indicated to Detective Terrace that Worley never threatened him.[9] And, in regard to the allegations that Worley had a gun, Ward testified as follows:
"Q. And did you see anything in the car?
A. Well, as I was talking with him, I looked down. I glanced, just happened to glance and I am not sure if it was — I saw something on the seat, but I don't know exactly what it was, but it might not have been nothing."[10]
"* * *
"A. I can't say exactly what it was. I don't think it was.
Q. You don't think it was a gun?
A. I don't think it was, but I can't say for sure.
Q. But you were having a cordial conversation with Christopher and certainly a gun would shout out at you if you saw it, wouldn't it?
A. Possibly.
Q. But you never felt threatened at all by Christopher on the 21st of January?
A. No.
Q. He wasn't intimidating. He wasn't menacing?
A. No.
Q. And he never got out of his car?
A. No."[11]
 {¶ 17} Nonetheless, the State argued that Worley aided and abetted Bryant in the commission of aggravated robbery. R.C. 2923.03 prohibits complicity with others to commit crimes and provides as follows:
"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:
"(1) Solicit or procure another to commit the offense;
"(2) Aid or abet another in committing the offense;
"(3) Conspire with another in committing the offense in violation of Section 2923.01 of the Revised Code;
"(4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 18} A person aids and abets another when he assists another in the accomplishment of a common design or purpose.[12] The accomplice's criminal intent may be inferred, by direct or circumstantial evidence, and from the presence, companionship, and conduct of the accomplice both before and after the offense is committed.[13]
 {¶ 19} Again, when the evidence is viewed in the light most favorable to the prosecution, there is no indication that Worley and Bryant prearranged in concert to confront Ward and that the confrontation led to the aggravated robbery. As previously noted, the evidence indicates a chance encounter between Ward and Worley. When Ward approached Worley's car, Worley was talking to Bryant on his cell phone. After a discussion with Ward, Worley handed Ward the phone. Ward testified that Bryant was irate, and that the attack took place within minutes after talking with him.
 {¶ 20} Further, there was no testimony about what Worley was doing during the entire shooting incident. However, Ward testified that Worley never exited his vehicle. Thus, there is no indication that Worley took any overt action in the commission of the aggravated robbery. In order to constitute aiding and abetting, the accused must have taken some role in causing the commission of the offense.[14] The mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor.[15]
 {¶ 21} Finally, Worley and Bryant left the scene in separate cars. The State concedes that Worley and Bryant drove off in opposite directions.[16] Thus, there is no indication that Worley assisted Bryant to flee the scene after he attacked and robbed Ward.
 {¶ 22} After an exhaustive review of the record before us, we conclude the State failed to put forth sufficient evidence to convict Worley of aggravated robbery. Accordingly, the first assigned error is well taken.
 {¶ 23} Having found that there was insufficient evidence to support Worley's conviction, we find the remaining assigned errors moot.[17]
Judgment reversed and conviction vacated.
This cause is reversed and conviction vacated.
It is, therefore, ordered that said appellant recover of said appellee his costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, J., and Corrigan, J., concurs
[1] Tr. at 284.
[2] Tr. at 288.
[3] Tr. at 290.
[4] Tr. at 291-293.
[5] State v. Thompkins (1997), 78 Ohio St.3d 380.
[6] Id.; State v. Fryer (1993), 90 Ohio App.3d 37.
[7] Id. at 43.
[8] Tr. at 347.
[9] Tr. at 311.
[10] Tr. at 292.
[11] Tr. at 353.
[12] State v. Minor (Mar. 2, 2000), 5th Dist. No. 99CA63, at 4 (quoting Black's Law Dictionary (6th ed. 1990).
[13] State v. Nievas (1997), 121 Ohio App.3d 451, 456-457.
[14] State v. Sims (1983), 10 Ohio App.3d 56.
[15] State v. Widner (1982), 69 Ohio St.2d 267, 269.
[16] Tr. at 554.
[17] App.R. 12(A)(1)(c).