JOURNAL ENTRY AND OPINION
{¶ 1} Appellant-defendant, Dionte Hawthorne ("Hawthorne"), appeals his conviction. Finding no merit, we affirm.
 {¶ 2} In 2006, the Cuyahoga County Grand Jury indicted Hawthorne for a single count of having a weapon while under disability, a violation of R.C. 2923.13. Hawthorne pled not guilty and the matter proceeded to a jury trial where the following evidence was presented.
 {¶ 3} On June 20, 2006, while patrolling the area of East 55th and St. Clair in a single zone car, Cleveland police officer Edwin Cooper ("Cooper") responded to a request for help by Latasha Kinney ("Kinney"). Kinney flagged him down at the gas *Page 3 
station and asked him to accompany her home to remove Hawthorne. She believed that Hawthorne, the father of her two children, was in her home and feared that he would beat her. Cooper called for back up and met the other officers at Kinney's home on East 59th Street.
 {¶ 4} Cooper requested Kinney remain outside while he and the other officers entered the home to investigate. Cooper discovered Hawthorne upstairs asleep in his three-year-old daughter's bedroom, with what appeared to be an AK-47 assault rifle lying next to him in the bed. Hawthorne smelled of alcohol. Cooper found no other people in the home. After confiscating the loaded weapon, Cooper confronted Kinney regarding the dangerous weapon, who was "surprised" to learn of its existence in her home. The police charged Hawthorne with domestic violence and having a weapon while under disability.
 {¶ 5} On cross-examination, Cooper testified that Kinney never indicated that she was aware of the weapon, let alone that the weapon belonged to a person named "Tone."
 {¶ 6} Cleveland Det. Thomas Lett ("Lett") testified that he handled the follow-up investigation regarding Hawthorne's arrest stemming from the incident on June 20. He interviewed Kinney, the alleged victim, who did not want to prosecute Hawthorne but did not dispute the incident of domestic violence. Lett corroborated Cooper's testimony regarding the assault rifle, stating that the weapon was loaded. *Page 4 
Lett further testified that the field reports revealed that the rifle was found lying next to Hawthorne while no other people were home.
 {¶ 7} Kinney testified on behalf of the defense. She admitted that she and Hawthorne had a "rocky" relationship but denied ever being afraid of him. Prior to approaching Cooper, Kinney called the police from her mother's house and asked for assistance because she believed that Hawthorne was in her house breaking a window. They argued earlier on the telephone and she heard glass breaking. Although the police drove by, they did not enter her home until after she approached Cooper at the gas station. She denied ever stating that she was afraid of being beaten; rather, she wanted police assistance to remove Hawthorne from her home and send a message that she was not "playing."
 {¶ 8} Kinney's account of the police's discovery of the weapon differed from the police. Kinney testified that the police told her that they discovered the gun on the table next to her daughter's bed. She told the police that Hawthorne did not own the rifle, and they reassured her that Hawthorne would not be charged with any offense related to the weapon. According to Kinney, the gun belonged to her cousin's boyfriend, Tone. But Kinney admitted that she did not recall telling the ATF agent, who later searched her home, or even Cooper, that the gun belonged to Tone; she merely stated that the gun did not belong to Hawthorne.
 {¶ 9} Kinney further testified that, although she never saw the rifle, she knew her cousin's boyfriend brought the weapon inside the house the day before the *Page 5 
incident. On cross-examination, she testified that she allowed the weapon inside her home, despite her three-year-old and five-year-old children residing there, because they were not home at that time.
 {¶ 10} Hawthorne stipulated to his prior May 2004 conviction of drug trafficking and four-year sentence to community controlled sanctions.
 {¶ 11} The jury found Hawthorne guilty on the single count of having a weapon while under a disability. The trial court sentenced him to three years in prison. Hawthorne appeals his conviction, raising two assignments of error:
"[1] The State failed to produce sufficient evidence necessary to sustain a conviction against the defendant."
"[2] The Defendant's conviction was against the manifest weight of the evidence."
 {¶ 12} Although they involve different standards of review, we will address these assignments together because they involve the same evidence, and Hawthorne relies on the same argument in support of each assignment of error: The State failed to prove he knowingly possessed the weapon.
 Sufficiency and Manifest Weight of the Evidence {¶ 13} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a *Page 6 
conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 14} A challenge to the manifest weight of the evidence, on the other hand, attacks the credibility of the evidence presented.Thompkins, supra, at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. Id., citing State v. Robinson
(1955), 162 Ohio St. 486, 487.
 {¶ 15} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after "reviewing the entire record, weighs the evidence and all reasonable inferences,
considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, at 387, quotingState v. Martin (1983), 20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id. *Page 7 
 {¶ 16} Hawthorne was convicted of having a weapon while under disability, a violation of R.C. 2923.13, which provides, in part, that "no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance * * * if the person * * * has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]" See R.C.2923.13(A)(3). Hawthorne concedes that he was previously convicted of drug trafficking and under disability at the time of his arrest, thereby precluding him from possessing a firearm. He claims, however, that the State failed to prove that he knowingly possessed the weapon.
 {¶ 17} To "have" a firearm as referenced in R.C. 2923.13, one must either actually or constructively possess it. State v. Hardy (1978),60 Ohio App.2d 325. Actual possession requires ownership or physical control. Id. Constructive possession, on the other hand, "exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate physical possession."State v. Wolery (1976), 46 Ohio St.2d 316, 329, certiorari denied, 429 U.S. 932 (1976).
 {¶ 18} Constructive possession cannot be inferred by a person's mere presence in the vicinity of contraband. Cincinnati v. McCartney (1971),30 Ohio App.2d 45; State v. Harris, 8th Dist. No. 88765, 2007-Ohio-3916, at ¶ 13. But if the evidence demonstrates that the defendant was in close proximity to the contraband, such that the defendant was able to exercise dominion or control over the *Page 8 
contraband, this constitutes circumstantial evidence that the defendant was in constructive possession of the items. State v. Whitted, 8th Dist. No. 88979, 2007-Ohio-5069, at ¶ 11; State v. Frazer, 8th Dist. No. 89097, 2007-Ohio-5954, at ¶ 38; State v. Davis, 8th Dist. No. 86144,2005-Ohio-6721, at ¶ 17; State v. Hopkins, 8th Dist. No. 80652, 2002-Ohio-4586; State v. Pruitt (1984), 18 Ohio App.3d 50.[1]
Moreover, circumstantial evidence alone is sufficient to support the element of constructive possession. Id.; see, also State v. Jenks, supra, at 272 ("Circumstantial evidence and direct evidence inherently possess the same probative value.").
 {¶ 19} Hawthorne relies on this court's decision in State v.Duganitz (1991), 76 Ohio App.3d 363, for the proposition that the State failed to prove that he knowingly possessed the weapon. InDuganitz, we found insufficient evidence to sustain a carrying concealed weapon conviction against a driver where a .38 caliber revolver was found under a blanket near the front seat of the car. Id. Because the passenger of the vehicle had been left alone in the car for a period of time, and the gun was found in a location between the passenger and driver, we found that there was insufficient evidence to prove that the driver knew of the gun's presence in the *Page 9 
vehicle or that he possessed the gun. Id., at 368. We find this case distinguishable.
 {¶ 20} In stark contrast to the facts in Duganitz, here, the police responded to a reported incident of domestic violence involving Hawthorne and discovered him intoxicated, alone in the house, and asleep in his three-year-old daughter's bed with an assault rifle next to him. Cooper testified that Kinney, the homeowner, was "surprised" by the police's discovery of the weapon and did not know anything about it. Further, unlike the weapon at issue in Duganitz-a .38 caliber revolver hidden under a blanket-this case involves a loaded assault rifle, which the State offered into evidence, allowing the jury to assess its size and consider the likelihood of Hawthorne not knowing the existence of the weapon next to him. Given these facts, a rational trier of fact could conclude beyond a reasonable doubt that Hawthorne knowingly possessed the gun.
 {¶ 21} As for Hawthorne's contention that this court's decision inHardy, supra, supports his claim that he did not "have" the gun within the meaning of R.C. 2923.13, we disagree. In Hardy, we found insufficient evidence to sustain a conviction for having a weapon under disability when the defendant grabbed the weapon in self-defense and there was no evidence that the defendant possessed the weapon prior to the altercation. Hardy, 60 Ohio App.2d at 327-328. The facts inHardy demonstrated that Hardy, along with other employees, had knowledge of and *Page 10 
physical access to the gun, but the State offered no evidence that Hardy ever exercised dominion or control over the weapon prior to grabbing it in self-defense.
 {¶ 22} In contrast to Hardy, Hawthorne was alone in the house with the rifle lying next to him in bed. According to Cooper, Kinney stated that she neither owned the gun nor knew of its existence. The State presented ample circumstantial evidence that Hawthorne brought the rifle into the house and fell asleep with the rifle lying next to him. From this evidence, the jury could have concluded that Hawthorne actually possessed the rifle. Alternatively, the jury could have found that Hawthorne constructively possessed the rifle given its close proximity to him in the bed and the circumstances surrounding his presence in the home.
 {¶ 23} Further, we cannot say that the jury clearly lost its way in finding Hawthorne guilty. Although Kinney testified that Tone owned the rifle and that the police found it on the table next to the bed, the jury may have found her testimony not credible because of her relationship to Hawthorne. Additionally, Kinney admitted to several inconsistent actions: (1) Kinney never told the police about Tone at the time of Hawthorne's arrest despite claiming that he owned the rifle; (2) Kinney denied being afraid of Hawthorne despite calling the police to remove him from her home; and (3) Kinney allowed the rifle in her three-year-old daughter's bedroom. Moreover, even if the jury believed Kinney, the other evidence overwhelmingly demonstrated that Hawthorne knowingly possessed the rifle.
 {¶ 24} Therefore, the first and second assignments of error are overruled. *Page 11 
 {¶ 25} Accordingly, judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
CHRISTINE T. MCMONAGLE, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Contrary to Hawthorne's assertion, the State need not prove that the defendant committed "some overt act that would attribute toward his control or dominion of the weapon" to establish constructive possession. Hawthorne erroneously relies on State v. Worley, 8th Dist. No. 85791,2005-Ohio-6356, in support of this argument. Worley addresses the elements for aiding and abetting, and does not even deal with "constructive possession." *Page 1