[Cite as *State v. Carson*, 2018-Ohio-271.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105295**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DENICO D. CARSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-597119-B

**BEFORE:**   E.T. Gallagher, J., Keough, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   January 25, 2018

**ATTORNEY FOR APPELLANT**

Stephanie B. Scalise
Scalise Legal Services, L.L.C.
1360 East 9th Street, #910
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

BY:    Erin Stone
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, J.:

**{¶1}** Defendant-appellant, Denico Carson, appeals from his having weapons while under disability conviction. He raises the following assignment of error for review:

> 1. The trial court erred by finding appellant guilty of having weapons while under disability against the manifest weight of the evidence.

**{¶2}** After careful review of the record and relevant case law, we affirm Carson's conviction.

## I. Procedural and Factual History

**{¶3}** In July 2015, Carson and his codefendants, Darrell McCargo and Jerome Williams, were named in a 20-count indictment. The indictment charged Carson with two counts of felonious assault, with firearm specifications (Counts 1 and 2); three counts of discharge of a firearm on or near a prohibited premises, with firearm specifications (Counts 3, 4, and 5); improperly handling firearms in a motor vehicle (Count 6); aggravated vehicular assault, with firearm specifications (Count 7); assault (Count 8); criminal damaging or endangering (Count 9); three counts of aggravated riot, with firearm specifications (Counts 10, 11, and 12); two counts of inducing panic, with firearm specifications (Counts 13 and 14); having weapons while under disability (Count 16); failure to stop after accident, with firearm specifications (Count 18); and two counts of obstructing justice (Counts 19 and 20).[1]

---

[1] Counts 15 and 17 only applied to codefendants McCargo and Williams.

{¶4} Prior to trial, the state dismissed Counts 1, 3, 7, 10, 11, 12, 13, and 14.   In November 2016, the matter proceeded to trial.   Count 16, having weapons while under disability, was tried to the bench.   The remaining counts were tried to a jury.

{¶5} At trial, Candace Goodall testified that on the evening of May 31, 2015, she was driving her vehicle on Memphis Avenue, in Cleveland, Ohio, when she heard the sound of gunshots.   Goodall testified that she slowed down and looked towards the direction she believed the gunshots came from.   When she did not see anything, she proceeded to drive through the intersection of Memphis Avenue and Fulton Parkway. Goodall stated that a white SUV suddenly ran the red light and struck the corner of her vehicle.   The white SUV then accelerated through the intersection and kept driving without stopping.   Goodall testified that she did not have the ability to identify any of the occupants of the white SUV.   She also stated that she had "no idea who was firing the gun that day."

{¶6} Patrol Officer Courtney Evans, of the Cleveland Police Department, testified that she responded to a report of shots fired near Memphis Avenue and Fulton Parkway. When she arrived at the scene, Officer Evans assessed the damaged vehicle and spoke to Goodall.   Based on the information gathered from Goodall, Officer Evans stated that she and her partner searched the intersection for evidence of shots fired and discovered four spent shell casings from a .9 millimeter handgun and four spent shell casings from a .380 handgun in the area of the accident.   Officer Evans specified that the .9 millimeter shell casings were discovered near Fulton Parkway, "leading out onto Memphis

[Avenue]." The .380 casings were discovered next to the curb lane on Fulton Parkway. Officer Evans testified that based on the way the shell casings had landed, she "had reason to believe there were two vehicles shooting at each other in the intersection."

{¶7} While the officers were investigating the scene, they learned that the driver of the white SUV had called 911 to report that passengers of another vehicle had fired a gun at his SUV. Officers were dispatched to the location where the driver of the white SUV had parked after he fled the scene for his own safety.

{¶8} Based on the 911 call, the officers initially believed that the passengers of the white SUV were victims. However, Officer Evans explained that the officers subsequently "had reason to believe [that the passengers of the white SUV] were shooting as well" based on the discovery of the two different types of shell casings. Accordingly, Officer Evans testified that she requested that the passengers of the white SUV be transported back to the scene of the accident to take a gunshot residue test. Officer Evans testified that the white SUV had three male passengers when the police responded to the vehicle, despite the information provided during a separate 911 call that there were four male passengers in the white SUV at the time of the shooting. The three men were identified as Carson, McCargo, and Williams.

{¶9} Officer Thomas Herrigan of the Cleveland Police Department testified that he drove to the location where the white SUV was detained in an effort to gather additional evidence based on his belief that shots had been fired from two vehicles, including the white SUV. Det. Herrigan testified that he looked through garbage cans, shrubbery, and

the general area where a weapon may have been discarded from the white SUV. However, he was unable to locate a firearm.

{¶10} Detective Darren Robinson of the Cleveland Police Department testified that he photographed the damaged white SUV and the spent shell casings discovered near the scene of the accident. He further testified that he collected gunshot residue samples from the hands of Carson, McCargo, and Williams.

{¶11} Patrol Officer Allan Soros of the Cleveland Police Department testified that he received a dispatch to respond to a report of shots fired near the intersection of Memphis Avenue and Fulton Parkway. However, shortly after arriving at the scene, he responded to the location of the white SUV and its three male passengers. Officer Soros testified that the front end of the white SUV was "smashed in" and its rear passenger-side window was shattered. Officer Soros admitted that he initially believed the three men were victims of a shooting. However, when he learned that his colleagues had discovered two different types of shell casings near the scene of the car accident, he placed Carson, McCargo, and Williams in the back of his patrol vehicle and transported them to the scene of the accident.

{¶12} In the course of the investigation, copies of surveillance videos from a gas station near the intersection of Memphis Avenue and Fulton Parkway were collected by Detective David Lam of the Cleveland Police Department. Det. Lam testified that the surveillance video showed a late model Nissan Altima traveling behind the white SUV on Fulton Parkway. As both vehicles neared the Memphis Avenue intersection, the Altima

turned westbound through the gas station parking lot and the white SUV ran a red light, collided into Goodall's vehicle, and then proceeded to drive eastbound down Memphis Avenue. Det. Lam testified that before colliding with Goodall's vehicle, a passenger of the white SUV opened the back passenger door, leaned out of the vehicle, and fired a pistol towards the Nissan Altima. Det. Lam testified that the video footage depicts a "muzzle flash" coming from the brandished firearm.

{¶13} Det. Lam testified that "based on the video and based on speaking with [investigating officers], I had reason to believe that gunshots were exchanged between the two vehicles being the [white SUV] and the Nissan Altima." Accordingly, Det. Lam stated that he considered Carson, McCargo, and Williams to be suspects in his investigation into the shooting.

{¶14} Det. Lam and his supervisor subsequently interviewed Carson about his involvement in the shooting after Carson voluntarily came to the police station to provide a statement. Det. Lam testified that based on his conversations with the responding officers, and all the information he had gathered at that point in his investigation, he believed Carson was not credible and "provided false and misleading information" to the officers and detectives assigned to this case. He explained that Carson made statements about the car accident that were in direct conflict with the surveillance footage, denied having knowledge of anybody shooting from the white SUV, and stated that there were only three occupants in the white SUV when several 911 calls stated that there were four passengers.

{¶15} During his cross-examination, Det. Lam testified that Carson insisted that he was seated in the front passenger's seat of the white SUV and that he ducked down when he heard gunshots. Det. Lam admitted that he did not come across any evidence or witness that would discredit this portion of Carson's statement. Det. Lam further admitted that he believed there was probably a fourth person in the white SUV who fled from the vehicle before the officers arrived at the scene.

{¶16} Curtiss Jones, a supervisor at the Trace Evidence Unit of the Cuyahoga County Medical Examiner's Office, testified that he tested the gunshot residue samples submitted by Det. Robinson. Jones stated that the samples taken from McCargo and Williams contained "no particles characteristic of gunshot residues or indicative of gun shot residue." Jones testified that "negative results basically could mean that that person did not shoot a gun" or the gunshot residue was lost or shed, depending on various factors and the time between collection.

{¶17} Carson's sample, however, tested positive for particles of gunshot residue. Jones testified that the presence of the gunshot residue found in Carson's samples,

> basically allows for the conclusion that [he] fired a weapon, or [was] in close proximity to a firearm when it was discharged, or there was a secondary transfer of residue from a surface to [his] hands.

{¶18} Based on the information available to him, Jones admitted during his cross-examination that he was unable to state to a degree of scientific certainty that Carson fired a weapon. He reiterated that gunshot residue can also be transferred

through contact and can be found on individuals who were in close proximity to a discharged firearm. Jones explained that

> there is no difference in appearance or chemical makeup of residue that would be collected from the hand of a person who shot a gun as opposed to residue collected from a surface that the residue was secondarily transferred from. * * * The fact that there is residue there that is consistent with being created from the discharge of a firearm allows for three conclusions all equally likely.

{¶19} At the conclusion of trial, the jury found Carson not guilty of felonious assault (Count 2), discharge of a firearm on or near a prohibited premises (Counts 4 and 5), improperly handling firearms in a motor vehicle (Count 6), assault (Count 8), criminal damaging (Count 9), and stopping after accident (Count 18). Counts 19 and 20 were dismissed with prejudice. Counts 1, 3, 7, 10, 11, 12, 13, and 14 were nolled. The trial court, however, found Carson guilty of having weapons while under disability as charged in Count 16 of the indictment. At sentencing, the trial court imposed a one-year prison sentence.

{¶20} Carson now appeals from his conviction.

## II. Law and Analysis

{¶21} In his sole assignment of error, Carson argues his conviction was against the manifest weight of the evidence. We note, however, that while characterized as a manifest weight argument, the arguments raised within this appeal are directed at the sufficiency of the evidence.

{¶22} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v.*

*Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41. When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25; *Jenks* at paragraph two of the syllabus.

{¶23} In contrast to a challenge based on sufficiency of the evidence, a manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. When considering Carson's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree "with the factfinder's resolution of * * * conflicting testimony." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1977), citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). Weight of the evidence involves "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St. 3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must examine the entire record, weigh the evidence and all reasonable inferences,

consider the witnesses' credibility and determine whether, in resolving conflicts in the evidence, the trier of fact "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In conducting such a review, this court remains mindful that the credibility of witnesses and the weight of the evidence are matters primarily for the trier of fact to assess. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Reversal on manifest weight grounds is reserved for the "'exceptional case in which the evidence weighs heavily against the conviction.'" *Thompkins* at 387, quoting *Martin* at 175.

**{¶24}** In this case, the trial court found Carson guilty of having a weapon while under disability in violation of R.C. 2923.13(A)(3). The statute provides, in relevant part:

> [N]o person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.[2]

**{¶25}** "The issue of whether a person charged with having weapons while under disability knowingly acquired, had, carried, or used any firearm or dangerous ordnance 'is

---

[2] Prior to trial, Carson stipulated to a prior felony conviction for drug trafficking in violation of R.C. 2925.11(A).

to be determined from all the attendant facts and circumstances available.'" *State v. Bray*, 8th Dist. Cuyahoga No. 92619, 2009-Ohio-6461, ¶ 21, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492, 696 N.E.2d 1049 (1998).

{¶26} To "have" a firearm within the meaning of R.C. 2923.13(A), a person must have actual or constructive possession. *State v. Davis*, 8th Dist. Cuyahoga No. 104221, 2016-Ohio-7964, ¶ 13, citing *State v. Adams*, 8th Dist. Cuyahoga No. 93513, 2010-Ohio-4478, ¶ 19. Actual possession is ownership or physical control, whereas constructive possession is knowingly exercising dominion and control over an object, even if it is not within one's immediate physical possession. *State v. Jones*, 8th Dist. Cuyahoga No. 101311, 2015-Ohio-1818, ¶ 46.

{¶27} In challenging the evidence supporting his conviction, Carson argues the state failed to present any "direct evidence that he had a gun." Carson contends that "not one single person ever saw [him] with a gun," "the videos did not show him with a gun," and "no gun was ever recovered with fingerprints to place it in his hands." In support of his position, Carson relies on this court's decisions in *State v. Duganitz*, 76 Ohio App.3d 363, 601 N.E.2d 642 (8th Dist.1991), and *State v. Harris*, 8th Dist. Cuyahoga No. 88765, 2007-Ohio-3916.

{¶28} In *Duganitz*, the defendant and a passenger were stopped while driving in a high crime area. The arresting officer first removed Duganitz (the driver) from the car and then the passenger. In his search of the car, the officer observed a blanket that covered "the right side of the seat and went almost all the way to the driver's side." The

officer discovered a loaded .38 caliber revolver under the blanket and to the right of where Duganitz had been sitting. Duganitz denied ownership of the gun, but was later convicted of carrying a concealed weapon. This court reversed the conviction on appeal, finding that the state failed to establish beyond a reasonable doubt that Duganitz knowingly carried or had the gun.

{¶29} In reaching our decision, we held that:

> There is nothing in the record that either establishes or creates a reasonable inference that [Duganitz] knowingly carried or had the gun, beyond a reasonable doubt.
>
> Reasonable doubt is created by a contemplation of competing constructions of the evidence. [Duganitz] did not own the vehicle. The gun was found in a location between the passenger and driver even though somewhat closer to the driver. It was just as ready at hand to the passenger as [Duganitz]. The passenger was left in the vehicle alone for approximately one minute and could have just as easily slid the gun under the blanket. There were no fingerprints or other scientific tests conducted that would have conclusively proven whether [Duganitz] had the gun.

*Duganitz* at 368.

{¶30} In *Harris*, the defendant was found guilty of carrying a concealed weapon and having weapons while under disability after a bench trial. Harris was found riding in the passenger's seat of a vehicle with an intoxicated driver. During an inventory search of the vehicle, police discovered a gun under the passenger's seat. This court relied on *Duganitz* and reversed Harris's convictions, finding that the state failed to prove beyond a reasonable doubt that Harris knowingly carried or had the gun found under the seat. This court reasoned:

There was no evidence to establish the car belonged to Harris or that Harris knew the gun was in the car. Harris made no furtive gestures while sitting in the vehicle and fully cooperated with the police while they performed OVI tests on the driver. Furthermore, Harris made no attempt to flee, where guilty knowledge might be inferred, nor did he act nervous. Moreover, there is no evidence on the record to demonstrate that Harris exercised dominion or control over the gun. There were no fingerprints or other scientific tests conducted that would have demonstrated beyond a reasonable doubt that he had knowingly carried the gun.

Furthermore, the state's argument that Harris constructively possessed the gun is misplaced. The gun was found under Harris' seat, but positioned in a way that was accessible to anyone in the front seat. The state's theory that the gun was in front of the seat adjustment bar and would have slid forward in the collision is mere speculation. The state failed to present evidence as to the weight of the gun or the force of the impact. Therefore, we cannot agree that the gun would have moved forward from under the seat because of the impact unless Harris placed it there after the collision.

*Harris* at ¶ 14-15.

**{¶31}** After careful consideration, we find Carson's reliance on *Duganitz* and *Harris* to be unpersuasive. Unlike the circumstances presented in *Duganitz* and *Harris*, this case does not involve the discovery of a concealed gun or issues concerning whether the defendant had knowledge that a concealed gun was in the vehicle. In this case, there is no dispute that a gun was fired from inside the white SUV. Thus, factors concerning ownership of the vehicle, the location of the firearm, and whether Carson made furtive gestures are irrelevant to this case. Moreover, unlike the facts presented in *Duganitz* and *Harris*, the state introduced evidence of scientific testing to support its theory at trial that Carson was the shooter, and therefore, had actual possession of the subject firearm.

**{¶32}** We agree that the record in this case does not contain any direct evidence, such as fingerprints or an eyewitness identification, that Carson was the shooter.

However, direct evidence is not required in order to find sufficient evidence to sustain a conviction. *State v. Lott*, 51 Ohio St.3d 160, 167, 555 N.E.2d 293 (1990). "Circumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph one of the syllabus.

{¶33} Circumstantial evidence is the proof of certain facts from which a jury may infer other connected facts that usually and reasonably follow according to the common experience of mankind. *Duganitz*, 76 Ohio App.3d 363, at 367, 601 N.E.2d 642. "[T]he circumstances, to have the effect of establishing an allegation of fact, must be such as to make the fact alleged appear more probable than any other; the fact in issue must be the most natural inference from the facts proved." *Id.*

{¶34} In this case, the state presented evidence that on May 31, 2015, codefendant McCargo was driving a white SUV near the intersection of Memphis Avenue and Fulton Parkway when a passenger of the vehicle opened the rear passenger's side door and fired a gun at another vehicle. The white SUV then ran a red light and struck Goodall's vehicle as she was traveling through the intersection. McCargo then drove away from the scene of the accident, but called 911 to report that someone had shot at his vehicle. In the course of the investigation into the car accident and the reports of shots fired, the police discovered two different types of spent shell casings near the intersection, indicating that an individual from the white SUV had also fired a gun. When the police responded to the location where the white SUV had parked, they discovered three males,

Carson, McCargo, and Williams. Gunshot residue samples were taken from each man. Of the three, gunshot residue was only found in the sample obtained from Carson. No gunshot residue was found in the samples obtained from McCargo or Williams. The police searched the white SUV and the nearby area but were unable to locate a firearm.

{¶35} Under these circumstances, we find the state presented sufficient circumstantial evidence that Carson had actual possession of the subject firearm during the incident. We recognize that Jones could not testify to a reasonable degree of scientific certainty that Carson was the shooter based on the presence of gunshot residue alone. However, viewing the evidence in a light most favorable to the prosecution, we find the results of the gunshot residue test permitted a reasonable trier of fact to conclude, beyond a reasonable doubt, that "the most natural inference from the facts proved" is that Carson knowingly possessed a firearm. Accordingly, we find that Carson's having weapons while under disability conviction is supported by sufficient evidence.

{¶36} Moreover, this is not the exceptional case where Carson's conviction is against the manifest weight of the evidence. The trial court, as the trier of fact, was in the best position to weigh the credibility of the witnesses and various theories presented by the state and defense. Here, Det. Lam conceded that he had no evidence to discredit Carson's contention that he was sitting in the front seat of the white SUV at the time of the shooting. However, he testified that he believed Carson had presented false and misleading information to various officers and detectives throughout the investigation. We recognize that Jones testified that the fact that a person has gunshot residue on them

does not necessarily mean to a degree of scientific certainty that he fired a gun. Nonetheless, we find the trial court properly weighed Jones's testimony and the circumstantial evidence of Carson's gun residue test results in conjunction with the negative gun residue results of the other passengers who were in the white SUV at the time of the shooting. Deferring to the trier of fact, as we must, we cannot say that the finder of fact clearly lost its way in finding Carson guilty of having weapons while under disability.

**{¶37}** Carson's sole assignment of error is overruled.

**{¶38}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
LARRY A. JONES, SR., J., CONCUR